■ SHEILA J. BROWN et al., Respondents, v JAY M. BAUMAN, M.D., Appellant, et al., Defendants. [841 NYS2d 229]—

Order, Supreme Court, Bronx County (Mark Friedlander, J.), entered March 13, 2006, which denied defendant Bauman's motion for summary judgment, unanimously reversed, on the law, without costs or disbursements, and the motion granted. The Clerk is directed to enter judgment in favor of defendant Bauman dismissing the complaint as against him.

Defendant Dr. Bauman, a solo practitioner and board-certified obstetrician/gynecologist who treated plaintiff Sheila Brown during her pregnancy, was unexpectedly late in proceeding from his home to the hospital to attend his patient's labor and delivery. Nonetheless, he confirmed by telephone that an on-call attending obstetrician, Dr. Chen, and the chief obstetrical resident, Dr. Przydzial, were caring for the patient pending his arrival. Dr. Przydzial delivered the infant with Dr. Chen assisting

and supervising. Dr. Bauman eventually arrived at the hospital, shortly after the birth, at which time Dr. Przydzial, under Dr. Chen's supervision, was engaged in repairing a perineal laceration sustained by the patient during the delivery.

After the delivery, the patient began to experience severe urinary incontinence, which has now been resolved, and approximately one year later she began to suffer from fecal incontinence. Approximately 2½ years after giving birth, she underwent surgery to repair a torn sphincter. She claims that she continues to suffer from permanent fecal incontinence caused by nerve damage. Plaintiffs contend that with proper management by an experienced obstetrician/gynecologist, the perineum tear could have been avoided. The patient argues that had Dr. Bauman been present, his experience might have led him to perform an episiotomy, which would have prevented the perineum tear that extended into her anal sphincter. Instead, she claims, the delivery was left to an inexperienced resident, who performed a faulty repair of the perineal laceration.

After joinder of issue and extensive discovery, Dr. Bauman moved for summary judgment dismissing the complaint, arguing that although he was not available for the delivery, he did arrange for coverage by competent medical personnel in his absence, and also that there is no connection between his arrangement of medical coverage and the alleged injuries. The motion court erred in finding an issue of fact as to the existence and scope of the duty owed by Dr. Bauman to his patient. "Unlike forseeability and causation, both generally factual issues to be resolved on a case-by-case basis by the fact finder, the duty owed by one member of society to another is a legal issue for the courts" (*Eiseman v State of New York*, 70 NY2d 175, 187 [1987]). A physician who is unable to care for the patient does not depart from the standard of care so long as he or she arranges to transfer the care of the patient to another well-qualified physician (*Kleinert v Begum*, 144 AD2d 645 [1988]; *see also Lener v Baron*, 20 AD2d 814 [1964]). On this record, Dr. Bauman has established that he complied with the requisite standard of care, despite the fact that he was unable to recall if, in his telephone conversation with Dr. Chen, the attending physician on duty, at a time when Dr. Bauman believed he would be present for the delivery, he specifically requested Dr. Chen to cover for him. This conversation took place after several telephone conversations with Dr. Przydzial.

In any event, plaintiffs have failed to submit any evidence to show the existence of an issue of fact as to causation. It is uncontested on this record that the decision whether to perform

an episiotomy could only be made at the time of delivery. Also, Dr. Chen, present at the delivery, testified that an episiotomy was not performed because it was not necessary. The opinion of plaintiffs' expert on causation comes down to the assertion that had Dr. Bauman "properly examine[d] Mrs. Brown so as to be able to diagnose the third/fourth degree laceration . . . Mrs. Brown should have then been referred to a qualified colorectal surgeon so that the appropriate repair could then be attempted." This conclusion is entirely speculative and specious, and rests upon a number of unsupported assumptions: that plaintiff sustained a third- or fourth-degree tear and that a proper examination would have revealed it, that such a laceration would have been amenable to surgical repair, and that the repair would have been successful.

Not only does this litany of supposition fail to constitute probative evidence (*see Diaz v New York Downtown Hosp.*, 99 NY2d 542 [2002]), but the assertions are belied by the record. The patient's testimony that an unidentified nurse told her that she had a "huge tear" is pure hearsay, lacking in probative value (*see Cassese v Brooklyn Hosp.*, 121 AD2d 358, 359 [1986]). Opinion evidence must be based on facts in the record or personally known to the witness (*Cassano v Hagstrom*, 5 NY2d 643, 646 [1959]). Thus, the opinion that a proper examination would have revealed a third/fourth-degree laceration requiring surgical repair reflects a "reasoning back" from the fact of injury to find negligence. Hindsight reasoning is insufficient to defeat summary judgment (*see Zawadzki v Knight*, 76 NY2d 898 [1990]). More significantly, the speculation that the patient sustained a third/fourth-degree laceration is contradicted by the evidence. Numerous notations in the hospital record show she sustained a second-degree perineal tear. Dr. Przydzial, the delivering doctor, testified that the patient sustained a second-degree laceration. She examined the rectum and rectal sphincter and, in consultation with Dr. Chen, determined the laceration to be of second-degree grade. Both doctors graded the tear as such because it went through the vaginal mucosa and the perineal body but not into the rectal sphincter. It was likewise speculative of plaintiffs' expert to infer that the laceration would have been successfully repaired had Dr. Bauman made a proper examination and diagnosis. The opinion failed to address the possibility that the repair might have obscured a problem or abnormality that even a "proper" examination would not have revealed. Significantly, Dr. Bauman testified that once the laceration was repaired, he could not undo the stitches to check the area.

In opposing Dr. Bauman's motion, plaintiffs invoked CPLR

3212 (f), which permits denial of a motion to permit disclosure should it appear from affidavits in opposition that "facts essential to justify opposition may exist but cannot then be stated." The only discovery cited that is due from Dr. Bauman consists of his telephone records, and plaintiffs have failed to justify what essential facts would be uncovered through such discovery. Thus, the argument that Dr. Bauman's motion was premature is lacking in merit. Concur—Tom, J.P., Friedman, Sullivan and Catterson, JJ.