(March 17, 2009)

■ LAWRENCE P. BERLINGER, Respondent, v RONALD B. KRAFT et al., Appellants, et al., Defendants. [875 NYS2d 50]—

Order, Supreme Court, New York County (Alice Schlesinger, J.), entered May 20, 2008, which, to the extent appealed from, in an action seeking damages for personal injuries arising out of purported medical malpractice, denied the motions of defendants Dr. Ronald Kraft, Cornell University, Dr. Scott Gerst and Lenox Hill Radiology and Medical Imaging Associates, P.C., for summary judgment dismissing the complaint as against them, unanimously modified on the law, to the extent of dismissing the complaint as against Dr. Ronald Kraft and Cornell University, and otherwise affirmed, without costs. The clerk is directed to enter judgment accordingly.

Plaintiff commenced this action to recover damages for personal injuries sustained in connection with the alleged unnecessary removal of two thirds of his right lung due to a misdiagnosis of his condition. Specifically, the radiologist who interpreted a PET scan performed on plaintiff's chest found that plaintiff had a pulmonary lesion that was "most suspicious for primary lung carcinoma." However, an analysis of the lung tissue following the surgery disclosed that there was no cancer and that, as indicated by plaintiff's first CT scan, the lesion had been caused by an atypical mycobacterial infection, a condition that the radiologist admitted can look exactly like cancer.

A review of the expert affirmations submitted by the respective parties reveals that plaintiff's opposition to the motions for summary judgment submitted by the radiology defendants was sufficient to establish the existence of triable questions of fact (see Alvarez v Prospect Hosp., 68 NY2d 320, 324-325 [1986]). The evidence indicates that the radiologist's reading of the PET scan may have been misleading and that the surgeon, who was unfamiliar with the test, may have unduly relied upon it in electing to perform the surgery upon plaintiff. However, for the reasons stated below, a trier of fact could not reasonably

conclude that the internist's alleged delay in referring plaintiff to a pulmonologist for a consultation was a contributing factor to the decision to perform the surgery.

Robert B. Kraft, the internist, examined plaintiff for the first time in August 2002 after he had been seen by an otolaryngologist. The latter had ordered a CT scan after plaintiff experienced a single incident of spitting blood a month earlier. The CT scan indicated that the incident of spitting blood (hemoptysis) may have been caused by an atypical mycobacterial infection. Based on that diagnosis, the radiologist who performed the CT scan recommended a follow-up CT scan in six months. At that time, plaintiff did not have any symptoms that the infection was progressing, such as fatigue or weight loss. He continued treatment with Dr. Kraft for various other unrelated conditions.

There were three follow-up visits to Dr. Kraft before plaintiff underwent the second CT scan. At the October 2002 visit, plaintiff reported feeling better and had had no recurrence of spitting blood. At the December 2002 visit, plaintiff complained of breathing difficulty, which he himself attributed to a nasal obstruction. After ascertaining that plaintiff's lungs were clear, Dr. Kraft prescribed Nasonex. At the third visit in January 2003 plaintiff reported improvement in his breathing since he had begun taking the medication. There were no other incidents of hemoptysis. It was on April 7, 2003, after plaintiff complained of mild shortness of breath, that Dr. Kraft ordered the repeat CT scan. Based on a radiologist's report of a mass seen on the CT scan, Dr. Kraft referred plaintiff to a pulmonologist, who ordered testing for TB, which was negative. Plaintiff then saw another pulmonologist, Mark Spero, M.D. Dr. Spero ordered the aforementioned PET scan that indicated the presence of a lesion suspicious for primary carcinoma in the right lower lobe. He then sent plaintiff to a thoracic surgeon, who recommended a biopsy. Plaintiff went to another surgeon, John McCabe, M.D., to have the biopsy performed. Dr. McCabe ended up removing a portion of plaintiff's right lung, which he claimed was necessary to reach the mass shown on the PET scan.

Dr. Kraft proffered the affidavit of Dr. Bruce F. Farber, an internist with a subspecialty in infectious diseases, who opined that Dr. Kraft treated plaintiff in accordance with good and accepted practices. Dr. Farber averred that the proper treatment for mycobacterial infection is to monitor symptoms to determine if there is progression and repeat the CT scan after six months to determine if the condition has progressed or cleared. Based on the symptoms reported at the visits between August and April, Dr. Farber found that there was no evidence of progres-

sion of disease before April 2003, at which time Dr. Kraft did refer plaintiff to two pulmonologists.

Plaintiff submitted the affidavit of an unnamed thoracic surgeon who opined that Dr. Kraft deviated from good and accepted practices by not referring plaintiff to a pulmonologist earlier, contending that, had such a referral been made, the pulmonologist would have performed a bronchoscopy or needle biopsy that would have determined that plaintiff suffered from a mycobacterial infection and would have prescribed appropriate antibiotics.

However, neither pulmonologist whom plaintiff did consult performed or ordered a bronchoscopy or needle biopsy and neither one prescribed or suggested prescribing an antibiotic—despite the fact that there had already been a diagnosis of atypical mycobacterial infection, based on the August CT scan. The expert's contention that it was too late to do a bronchoscopy belies common sense if, indeed, a bronchoscopy would have been the appropriate diagnostic procedure. In any event, presumably a bronchoscopy would have furnished information that was already known. If antibiotic treatment were indicated, at least one of the pulmonologists would have prescribed or recommended it, and neither did. Even after the surgery, when a substantial amount of tissue was available for culture, if antibiotic treatment were appropriate, it would have been prescribed to contain any remaining infection. The only treatment given was a TB medication although plaintiff had not tested positive for TB, and that medication was discontinued shortly thereafter. Dr. McCabe, the surgeon, who initially planned to perform a biopsy but ended up performing a partial lung resection, stated that a needle biopsy was not indicated because it might miss malignant tissue.

Since plaintiff offered no evidence that the mycobacterial infection was progressing or even present between October 2002 and January 2003 (the visit prior to April 2003), it would be pure speculation to find that an earlier referral would have prevented the allegedly unnecessary surgery (see e.g. Brown v Bauman, 42 AD3d 390, 392 [2007]).

Since plaintiff's claim against Cornell University is based on its vicarious liability for the acts of Dr. Kraft, the complaint should also be dismissed as against Cornell (see Perry v Costa, 97 AD2d 655 [1983], affd sub nom. Perry v Inter-County Sav. Bank, 62 NY2d 630 [1984]). Concur—Tom, J.P., Moskowitz, Acosta and Freedman, JJ.