■ MARQUES FERNANDEZ, an Infant, by his Mother and Natural Guardian, RUTH DE LOS SANTOS, Respondent, v JOEL MOSKOWITZ, M.D., et al., Appellants. [925 NYS2d 476]—

Order, Supreme Court, New York County (Joan B. Lobis, J.), entered June 15, 2010, which, in an action alleging medical malpractice relating to the prenatal care and delivery of infant plaintiff, denied defendants' motions for summary judgment dismissing the complaint, unanimously reversed, on the law, without costs, and the complaint dismissed. The Clerk is directed to enter judgment accordingly.

Infant plaintiff, Marques Fernandez (infant), and his mother, plaintiff Ruth De Los Santos (mother), allege that defendants Dr. Moskowitz and New York University Medical Center (NYUMC) deviated from the standard of care during prenatal care, and labor and delivery, and that defendants failed to obtain

informed consent for the emergency caesarean section. As a result of this alleged malpractice, plaintiffs claim infant suffered a hypoxic-ischemic brain injury which has resulted in developmental delays and neurological impairments.

Mother first saw Dr. Moskowitz on January 2, 2004 for prenatal care. Ultrasounds were performed on February 25, 2004 and April 21, 2004, and both showed that the fetus was growing at a normal rate. The third and final ultrasound was performed on June 30, 2004. It revealed that the fetus's growth rate had changed from the previous two ultrasounds, and that the ratio of head circumference to abdominal circumference was outside the normal range.

At approximately 11:00 A.M. on July 4, 2004, while in her 39th week of pregnancy, mother's water broke and she was subsequently admitted to NYUMC. Mother experienced a normal labor with no signs of fetal distress and no complications until 10:40 P.M. when she suffered a prolapsed umbilical cord. Dr. Moskowitz, who had not examined mother prior to 10:40 P.M., ordered an emergency caesarean section and mother arrived in the operating room at 10:54 P.M. At approximately 11:09 P.M., the baby was delivered. Upon delivery, infant cried spontaneously, had normal Apgar scores, and had normal cord blood gases. He was taken to the newborn nursery where he ate well, had good color and muscle tone and did not experience any seizures or other neonatal complications. Mother and infant were discharged from the hospital four days after birth.

Infant proceeded to develop normally during the first year of his life and his pediatric records indicate he was a healthy baby. In November 2005, an MRI of infant's brain, which was done because of an eye condition, yielded normal results. In July 2006, during his two-year-old visit to his pediatrician, the doctor observed some speech delays and behaviors that suggested a developmental disorder on the autism spectrum. The pediatrician referred infant for a comprehensive evaluation by New York City Early Intervention, which diagnosed him with pervasive developmental disorder (PDD). This disorder is within the mild to moderately autistic range. In May 2007, infant underwent another MRI of his brain, and it too yielded normal results. Plaintiffs commenced this medical malpractice action in August 2007, alleging that negligent prenatal care and negligent delivery resulted in a brain injury and developmental delays.

The motion court should have granted defendants' summary judgment motions because plaintiffs did not adequately address defendants' prima facie showing that there was no hypoxic-ischemic brain injury, which occurs when the brain is deprived

of oxygen (*see Rodriguez v Waldman*, 66 AD3d 581 [2009]). Plaintiffs were required to establish that Dr. Moskowitz and NYUMC departed from the standard of care in treating plaintiffs and that those departures were the proximate cause of infant's injuries (*see Dallas-Stephenson v Waisman*, 39 AD3d 303, 306-307 [2007]). Hindsight reasoning is not sufficient to defeat a summary judgment motion (*Brown v Bauman*, 42 AD3d 390, 392 [2007]).

Defendants' experts contended that infant's developmental and cognitive delays, separate and apart from PDD, were the result of his eye condition, which is a genetic visual impairment that has a shown association with autism. Additionally, defendants' experts cited infant's normal Apgar scores and cord blood gases as further evidence that he did not suffer a brain injury at birth. Moreover, they noted the two normal MRIs of infant's brain.

Plaintiffs' experts opined that the developmental delays were due to a brain injury, and contended the brain injury occurred as a result of intrauterine growth restriction (IUGR) and a prolapsed umbilical cord. Plaintiffs' obstetrical expert, Dr. Halbridge, alleged that the June 30, 2004 ultrasound evidenced the presence of IUGR, and as a result, infant did not receive enough oxygen to his brain. Dr. Halbridge further alleged that the type of brain injury this infant suffered is commonly subtle at birth and over the first few months of life.

However, Dr. Halbridge failed to refute the MRIs relied on by defendants' experts, both of which yielded normal results, and were administered well past the first few months of infant's life. Indeed, infant developed normally for an extended period of time and did not exhibit signs of delay until he was two years old, facts which remain unexplained by plaintiffs' experts. Both Dr. Halbridge and plaintiffs' expert pediatrician and neurologist, Dr. Trifiletti, in a conclusory fashion, state that infant's developmental delays are not related to his genetic visual impairment, and that the only reasonable etiology is a brain injury that occurred as a result of IUGR and a prolapsed umbilical cord. However, the experts fail, via medically supported assertions, to establish the basis for this conclusion. The mere contention that defendants deviated from the standard of care by failing to diagnose IUGR and not lifting infant's head off of the umbilical cord prior to the emergency caesarean section, does not establish that the alleged deviations were the proximate cause of infant's developmental delays, which appeared two years after the delivery.

The motion court also should have granted summary judg-

ment to defendants on plaintiffs' informed consent claim because plaintiffs were unable to rebut defendants' prima facie showing of lack of proximate cause. Although mother alleges that she was not properly informed after the June 30, 2004 ultrasound that vaginal delivery involved excessive risk, she fails to establish that the decision not to perform a caesarean section on June 30th led to the developmental problems that infant is now experiencing.

We have reviewed plaintiffs' remaining contentions and find them unavailing. Concur—Gonzalez, P.J., Sweeny, Moskowitz, Renwick and Richter, JJ. **[Prior Case History: 2010 NY Slip Op 31524(U).]**