# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**1146**
**CA 11-00343**
PRESENT: FAHEY, J.P., CARNI, SCONIERS, GORSKI, AND MARTOCHE, JJ.

---

JOSEPH F. GAGNON, JR. AND SHARON GAGNON,
PLAINTIFFS-APPELLANTS,

V                                                    MEMORANDUM AND ORDER

ST. JOSEPH'S HOSPITAL, THROUGH ITS OFFICERS,
AGENTS AND/OR EMPLOYEES, RICHARD KELLEY, M.D.,
INDIVIDUALLY AND AS AN OFFICER, AGENT AND/OR
EMPLOYEE OF ST. JOSEPH'S HOSPITAL, DAVID
ENG, M.D., INDIVIDUALLY AND AS AN OFFICER,
AGENT AND/OR EMPLOYEE OF ST. JOSEPH'S HOSPITAL,
AND CRAIG MONTGOMERY, M.D., INDIVIDUALLY AND AS
AN OFFICER, AGENT AND/OR EMPLOYEE OF ST.
JOSEPH'S HOSPITAL, DEFENDANTS-RESPONDENTS.

---

GUSTAVE J. DETRAGLIA, JR., UTICA, FOR PLAINTIFFS-APPELLANTS.

SMITH, SOVIK, KENDRICK & SUGNET, P.C., SYRACUSE (JAMES D. LANTIER OF
COUNSEL), FOR DEFENDANTS-RESPONDENTS DAVID ENG, M.D., INDIVIDUALLY AND
AS AN OFFICER, AGENT AND/OR EMPLOYEE OF ST. JOSEPH'S HOSPITAL, AND
CRAIG MONTGOMERY, M.D., INDIVIDUALLY AND AS AN OFFICER, AGENT AND/OR
EMPLOYEE OF ST. JOSEPH'S HOSPITAL.

SUGARMAN LAW FIRM, LLP, SYRACUSE (JOSHUA M. GILLETTE OF COUNSEL), FOR
DEFENDANT-RESPONDENT RICHARD KELLEY, M.D., INDIVIDUALLY AND AS AN
OFFICER, AGENT AND/OR EMPLOYEE OF ST. JOSEPH'S HOSPITAL.

---

Appeal from an order and judgment (one paper) of the Supreme
Court, Oneida County (Samuel D. Hester, J.), entered November 30, 2010
in a medical malpractice action. The order and judgment granted the
motions of defendants Richard Kelley, M.D., individually and as an
officer, agent and/or employee of St. Joseph's Hospital, David Eng,
M.D., individually and as an officer, agent and/or employee of St.
Joseph's Hospital, and Craig Montgomery, M.D., individually and as an
officer, agent and/or employee of St. Joseph's Hospital, for summary
judgment dismissing the complaint against them.

It is hereby ORDERED that the order and judgment so appealed from
is reversed on the law without costs, the motions are denied and the
complaint against defendants Richard Kelley, M.D., David Eng, M.D.,
and Craig Montgomery, M.D., individually and as officers, agents
and/or employees of St. Joseph's Hospital, is reinstated.

Memorandum: Plaintiffs commenced this action seeking damages for

injuries allegedly sustained by Joseph F. Gagnon, Jr. (plaintiff) as a result of defendants' medical malpractice.  We agree with plaintiffs that Supreme Court erred in granting the motion of defendants David Eng, M.D. and Craig Montgomery, M.D. (Montgomery defendants) and the motion of defendant Richard Kelley, M.D., seeking summary judgment dismissing the complaint against them.  On a motion for summary judgment, defendants in a medical malpractice case have "the initial burden of establishing the absence of any departure from good and accepted medical practice or that the plaintiff was not injured thereby" (*Williams v Sahay*, 12 AD3d 366, 368; *see Humphrey v Gardner*, 81 AD3d 1257, 1258).  In support of their motion, the Montgomery defendants submitted an expert's affidavit that "fail[ed] to address each of the specific factual claims of negligence raised in plaintiff's bill of particulars, [and thus] that affidavit is insufficient to support a motion for summary judgment as a matter of law" (*Larsen v Banwar*, 70 AD3d 1337, 1338).

The Montgomery defendants also failed to establish as a matter of law that their alleged negligence was not a proximate cause of plaintiff's injury (*see generally Alvarez v Prospect Hosp.*, 68 NY2d 320, 324; *Padilla v Verczky-Porter*, 66 AD3d 1481, 1483).  The expert asserted that the Montgomery defendants could not have damaged plaintiff's left phrenic nerve during surgery on his cervical spine because the surgical site was on the right side of the cervical spine and the damaged nerve was on the left side thereof.  The expert also asserted that the removal of an osteophyte on the left side at C4-5 could not have damaged the left phrenic nerve because that nerve is located at C3.  Dr. Eng's operative notes, however, indicate that the Montgomery defendants also removed an osteophyte from the left side at C3-4 and used screws to attach a plate to the cervical spine, and the expert did not state whether the left phrenic nerve could have been damaged during those procedures.  The Montgomery defendants' failure to make a prima facie showing of entitlement to summary judgment "requires denial of the motion, regardless of the sufficiency of [plaintiffs'] opposing papers" (*Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853).

We also conclude that Dr. Kelley failed to meet his initial burden on his motion for summary judgment dismissing the complaint against him.  Dr. Kelley submitted his own affidavit in support of the motion and contended therein that he was entitled to summary judgment because he complied with the accepted standard of care and did not cause an injury to plaintiff's left phrenic nerve.  According to Dr. Kelley, his instruments remained on the right side of plaintiff's spine and did not cross the midline of the anterior cervical spine. In his operative notes, however, Dr. Kelley stated that he performed tasks "on either side of the midline."  The operative notes also indicate that Dr. Kelley used retractors to hold back structures in plaintiff's neck, but the affidavit of Dr. Kelley did not establish as a matter of law that the use of retractors could not have caused an injury to the left phrenic nerve.  Because Dr. Kelley failed to make a prima facie showing of entitlement to summary judgment, we need not consider the adequacy of plaintiff's opposing papers (*see generally*

*Winegrad*, 64 NY2d at 853).

We decline the request of plaintiffs to search the record and grant summary judgment on liability with respect to the cause of action against the Montgomery defendants and Dr. Kelley on the theory of res ipsa loquitur pursuant to CPLR 3212 (b).  "[O]nly in the rarest of res ipsa loquitur cases may . . . plaintiff[s] win summary judgment . . . That would happen only when the plaintiff[s'] circumstantial proof is so convincing and the defendant[s'] response so weak that the inference of defendant[s'] negligence is inescapable" (*Morejon v Rais Constr. Co.*, 7 NY3d 203, 209), and that is not the case here (*see Dengler v Posnick*, 83 AD3d 1385, 1386).  Contrary to the contention of plaintiffs, the court acted within its discretion when it rejected the submission of the curriculum vitae of their expert as untimely. "While a court can in its discretion accept late papers, CPLR 2214 and [CPLR] 2004 mandate that the delinquent part[ies] offer a valid excuse for the delay" (*Mallards Dairy, LLC v E&M Engrs. & Surveyors, P.C.*, 71 AD3d 1415, 1416 [internal quotation marks omitted]) and, here, plaintiffs offered no excuse for the delay.

In light of our determination, we do not address plaintiffs' remaining contention.

All concur except CARNI, J., who dissents and votes to affirm in the following Memorandum:  I respectfully dissent inasmuch as I disagree with my colleagues that Supreme Court erred in granting the motion of defendants David Eng, M.D. and Craig Montgomery, M.D. (collectively, Montgomery defendants) and the motion of defendant Richard Kelley, M.D. for summary judgment dismissing the complaint against them.  I therefore would affirm the order and judgment.

On February 9, 2007, Joseph F. Gagnon, Jr. (plaintiff) underwent an anterior cervical discectomy at the C3-4 and C4-5 levels.  The surgical approach and incision were made anteriorly on the right side of plaintiff's neck by Dr. Kelley, a board certified otolaryngologist. After performing the surgical approach, Dr. Kelley was excused from the operating room.  The discectomy was then performed by Dr. Eng, a board certified neurosurgeon, who was assisted by Dr. Montgomery, also a board certified neurosurgeon.  Plaintiff was discharged from the hospital later that day and instructed to wear a cervical collar. There is no dispute that, upon discharge from the hospital following the surgery, plaintiff did not experience any symptoms or present any complaints consistent with a surgically-related left phrenic nerve injury.

On February 22, 2007, plaintiff was seen by Dr. Eng in his office and was without any complaints or symptoms consistent with a trauma or surgically-related injury to the left phrenic nerve.  At that visit, plaintiff was given permission to stop wearing the cervical collar part time.  Shortly thereafter, plaintiff began to experience symptoms of a left phrenic nerve injury.  Plaintiffs commenced this medical malpractice action alleging that, during the surgery, plaintiff sustained an injury to the left phrenic nerve as a result of the negligence of one or more of the defendants.  Supreme Court granted

the motions of the Montgomery defendants and Dr. Kelley for summary
judgment dismissing the complaint against them.

     I disagree with the conclusion of my colleagues that the
Montgomery defendants failed to submit an expert affidavit addressing
each of the specific factual claims of negligence raised in
plaintiffs' bill of particulars.  The majority does not identify any
" 'specific factual claim[] of negligence' " raised by plaintiffs and
not addressed by the Montgomery defendants in their moving papers.
Indeed, the only specific factual claim of negligence in plaintiffs'
bill of particulars is that the Montgomery defendants "failed to
recognize, . . . identify, isolate and prevent injury to the phrenic
nerve in the course [of] operating on the plaintiff . . . ."  In
specifically addressing that claim, the Montgomery defendants' expert
stated that plaintiff's left phrenic nerve injury "could not have been
caused by the cervical dis[c]ectomy performed by Drs. Eng, Montgomery
and Kelley on February 9, 2007.  [Plaintiff's] dis[c]ectomy began with
an anterior, right-side approach through the soft tissue structures on
the right to the osteophytes located on his cervical spine.
Anatomically, the left phrenic nerve is located lateral to the left
carotid artery, left jugular vein and left scalene musculature.  In
order to reach the left phrenic nerve from the right-side approach
used in [the] procedure, the physician would have had to pierce
through [plaintiff's] left scalene musculature **along with** at least one
of several vital structures[,] including the bon[e]y spine, trachea,
esophagus, carotid sheath, carotid artery, and/or jugular vein.  It
would therefore be anatomically impossible to cause injury to the left
phrenic nerve during an anterior cervical dis[c]ectomy with right-side
approach . . . without having seriously damaged one or more of those
vital structures **and** traversing the left scalene musculature."  The
expert further concluded, upon reviewing the medical records, that no
such injury occurred.  Comparing that expert's opinion to the specific
factual claim of negligence in plaintiffs' bill of particulars, I
conclude that the Montgomery defendants sufficiently established their
entitlement to summary judgment and shifted the burden to plaintiffs
to raise a triable issue of fact (*see Horth v Mansur*, 243 AD2d 1041,
1042-1043), which they failed to do.

     The majority also concludes that the Montgomery defendants failed
to establish that "their alleged negligence was not a proximate cause
of plaintiff's injury . . . ."  Initially, inasmuch as defendants
established in the first instance that they were not negligent in
recognizing, identifying, isolating and preventing injury to the left
phrenic nerve in the course of operating on plaintiff, they did not
have any such burden.  Thus, it was "beside the point to establish
that" the alleged negligence was not a proximate cause of the injury
(*Cassano v Hagstrom*, 5 NY2d 643, 645, *rearg denied* 6 NY2d 882).
Further, the Montgomery defendants' expert opined that it would be
"impossible" to cause injury to the left phrenic nerve without causing
injury to one or more vital structures, which undisputedly did not
occur during the surgery.  Therefore, even if the Montgomery
defendants had the burden to establish that their "alleged negligence
was not a proximate cause of plaintiff's injury," they more than
adequately did so by submitting evidence that it was "impossible" for

the injury to have occurred during the right-side surgical approach (*see Horth*, 243 AD2d at 1042-1043).

The majority criticizes the Montgomery defendants' "failure to make a prima facie showing of entitlement to summary judgment" because Dr. Eng's operative notes indicate that an osteophyte was removed from the left side at C3-4 and screws were used to attach a plate to the cervical spine. Importantly, those " 'specific factual claims of negligence' " are neither contained in plaintiffs' bill of particulars nor raised by their medical expert in opposition to the Montgomery defendants' motion. They are raised for the first time by the majority.

Advancing its own reading and interpretation of Dr. Kelley's operative notes, the majority further concludes that Dr. Kelley failed to meet his initial burden on the motion because he submitted evidence establishing that he "performed tasks 'on either side of the midline.' " Again, that specific allegation of negligence is first raised by the majority and is neither contained in plaintiffs' bill of particulars nor raised by their medical expert in opposition to Dr. Kelley's motion. Inasmuch as plaintiffs' medical expert has not interpreted Dr. Kelley's operative notes in that manner, I respectfully submit that this Court should refrain from interpreting, on its own and unaided by medical expert testimony, the operative notes from sophisticated surgical procedures in order to find a claim of negligence independent of any specific factual claim of negligence made by plaintiffs. Here, Dr. Kelley's operative notes contain the following reference to the performance of tasks on either side of the midline: "The bipolar cautery was used along the longus muscle on either side of the midline." The majority interprets the use of the term "midline" to mean the midline of the cervical spine. In the operative report, however, the term "midline" is used in reference to the longus muscle, which is situated on the anterior spine and also has a midline. In any event, in his affidavit in support of the motion, Dr. Kelley describes the involvement of the midline of the longus colli muscle as follows: "The approach concluded with identification of the midline and border of the longus colli muscles." In other words, the reference to the term "midline" in the operative report is to the midline of the *longus colli muscle on the right side* and not, as the majority concludes, the midline of the cervical spine. Thus, without any medical opinion from plaintiffs' expert or any specific claim of negligence in their bill of particulars, and contrary to Dr. Kelley's unchallenged explanation, the majority takes it upon itself to interpret operative notes from a complex neurosurgical procedure in order to identify a claim of negligence not advanced by plaintiffs. I cannot agree with that interpretation.

With respect to the conclusion of the majority that "the affidavit of Dr. Kelley did not establish as a matter of law that the use of retractors could not have caused an injury to the left phrenic nerve," I note that neither the term "retractor" nor any of its derivatives appear anywhere in the complaint or bill of particulars. Thus, the majority inappropriately criticizes Dr. Kelley's affidavit for failing to address a specific claim of negligence that was not

raised by plaintiffs in the first instance.  The first reference to "retraction" as an alleged cause of the left phrenic nerve injury appears in the opposition affidavit of plaintiffs' expert, which states that it is the expert's "opinion that during the procedure the retraction damaged the phrenic nerve . . . ."  I note that "retraction" per se of a nerve during a surgical procedure is not in and of itself a deviation from accepted surgical procedure (*see Schoch v Dougherty*, 122 AD2d 467, 468, *lv denied* 69 NY2d 605; *Welsh v State of New York*, 51 AD2d 602).  Dr. Kelley averred in his affidavit that the left phrenic nerve was not exposed or retracted during the right-side approach.  In addition, according to that affidavit, "dissection would need to continue and go beyond and behind the entire laryngopharyngeal complex and esophagus, the left carotid artery, vagus nerve and left internal jugular vein before the left phrenic [nerve] is reached.  It is not possible to retract or transect [those] structures to reach the left phrenic nerve with an anterior right side incision/approach without transecting, removing or severely injuring [those] structures and therefore the patient."  Critically, plaintiffs' expert and the majority assume that the left phrenic nerve was retracted.  In doing so, however, they ignore the undisputed evidence that no instrument or retractor used by Dr. Kelley came near the left phrenic nerve (*see Cassano*, 5 NY2d at 645).  "In drawing or attempting to draw the inference that the nerve[ was damaged by Dr. Kelley, plaintiffs' expert] was applying the fallacy of '*post hoc ergo propter hoc*' " (*id.* at 645).  "In other words, [the expert] attempted to [aver] in the form of an opinion [with respect] to a supposed fact of which [that expert] could have no knowledge, that is, that the [left phrenic nerve injury] was caused by [the] surgical [procedure]" (*id.* at 645-646).  There simply is no evidentiary basis, direct or circumstantial, that any surgical instruments were ever located near the left phrenic nerve during the operation, nor is there any evidentiary basis to support the assumptions of plaintiffs' expert that the left phrenic nerve was retracted during the procedure (*see Lowery v Lamaute*, 40 AD3d 822, *lv denied* 9 NY3d 810).  Moreover, setting aside the undisputed evidence that no retraction of the left phrenic nerve occurred during the procedure, plaintiffs' expert failed to distinguish between retraction per se and excessive retraction, either in degree or duration, and that expert did not set forth the standard of care with respect to the left phrenic nerve retraction that the expert asserts, in a conclusory fashion, occurred (*see generally DiMitri v Monsouri*, 302 AD2d 420).

Inasmuch as I conclude that the court properly granted the motions of the Montgomery defendants and Dr. Kelley, there is no remaining negligence cause of action to which the doctrine of res ipsa loquitur may be applied.  I therefore find no basis upon which to consider plaintiffs' request that we search the record and grant them summary judgment on liability pursuant to CPLR 3212 (b) (*see generally Abbott v Page Airways*, 23 NY2d 502, 512).

Lastly, I agree with the majority that the court did not abuse its discretion when it rejected the untimely submission of the curriculum vitae of plaintiffs' medical expert.

Entered:  December 30, 2011                   Frances E. Cafarell
                                              Clerk of the Court