Page v Niagara Falls Mem. Med. Ctr. (2019 NY Slip Op 05448)





Page v Niagara Falls Mem. Med. Ctr.


2019 NY Slip Op 05448


Decided on July 5, 2019


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on July 5, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: PERADOTTO, J.P., LINDLEY, DEJOSEPH, TROUTMAN, AND WINSLOW, JJ.


262 CA 18-00588

[*1]PATRICIA PAGE AND JAMES PAGE, PLAINTIFFS-RESPONDENTS-APPELLANTS,
v
NIAGARA FALLS MEMORIAL MEDICAL CENTER, DEFENDANT-APPELLANT-RESPONDENT, ET AL., DEFENDANTS. 






ROACH, BROWN, MCCARTHY & GRUBER, P.C., BUFFALO (SETH A. HISER OF COUNSEL), FOR DEFENDANT-APPELLANT-RESPONDENT.
HOGANWILLIG, PLLC, AMHERST (SCOTT MICHAEL DUQUIN OF COUNSEL), FOR PLAINTIFFS-RESPONDENTS-APPELLANTS. 


 Appeal and cross appeal from an order of the Supreme Court, Niagara County (Sara Sheldon, A.J.), entered January 3, 2018. The order, among other things, denied plaintiffs' motion for partial summary judgment and denied the motion of defendant Niagara Falls Memorial Medical Center for summary judgment. 
It is hereby ORDERED that the order so appealed from is unanimously modified on the law by granting the motion of defendant Niagara Falls Memorial Medical Center and dismissing the amended complaint against it, and as modified the order is affirmed without costs.
Memorandum: Patricia Page (plaintiff) was admitted to Niagara Falls Memorial Medical Center (defendant) for surgery in August 2008. Following surgery, a patient-controlled analgesia infusion pump was connected to plaintiff's intravenous line. The pump allowed plaintiff to self-administer pain medication, i.e., morphine, by pressing a button, subject to a maximum dosage feature that permitted delivery of the next dose only after the expiration of a programmed delay period. While monitored by defendant's nursing staff, plaintiff used the pump for approximately 10 hours without incident. Plaintiff thereafter experienced an adverse respiratory event; received an emergency opioid-reversing medication; was transferred to the intensive care unit (ICU) for further treatment, including physical therapy; and was discharged therefrom a few days later.
Plaintiff and her husband commenced this action in February 2011 to recover damages for injuries allegedly sustained by plaintiff as a result of, inter alia, defendant's alleged medical malpractice and negligence. This action has been before us on two prior appeals (Page v Niagara Falls Mem. Med. Ctr., 167 AD3d 1428 [4th Dept 2018]; Page v Niagara Falls Mem. Med. Ctr., 141 AD3d 1084 [4th Dept 2016]). Defendant now appeals, and plaintiffs cross-appeal, as limited by their brief, from an order denying defendant's motion for summary judgment dismissing the amended complaint against it and denying plaintiffs' motion for partial summary judgment on the issue of liability with respect to defendant.
Contrary to plaintiffs' contention on their cross appeal, we conclude that Supreme Court properly denied their motion for partial summary judgment on the issue of liability with respect to defendant on the theory of res ipsa loquitur. "[O]nly in the rarest of res ipsa loquitur cases may . . . plaintiff[s] win summary judgment . . . That would happen only when the plaintiff[s'] circumstantial proof is so convincing and the defendant's response so weak that the inference of defendant's negligence is inescapable" (Morejon v Rais Constr. Co., 7 NY3d 203, 209 [2006]), and that is not the case here (see Gagnon v St. Joseph's Hosp., 90 AD3d 1605, 1606-1607 [4th Dept 2011]; Dengler v Posnick, 83 AD3d 1385, 1386 [4th Dept 2011]).
Furthermore, we agree with defendant on its appeal that the court erred in denying its motion for summary judgment dismissing the amended complaint against it, and we therefore modify the order accordingly. "On a motion for summary judgment, [a] defendant[] in a medical malpractice case ha[s] the initial burden of establishing the absence of any departure from good and accepted medical practice or that the plaintiff was not injured thereby' " (Gagnon, 90 AD3d at 1605; see Occhino v Fan, 151 AD3d 1870, 1871 [4th Dept 2017]). Here, it is undisputed that defendant met its initial burden by establishing the absence of any departure from good and accepted medical practice and that any such departure was not a proximate cause of plaintiff's alleged injuries (see Wilk v James, 108 AD3d 1140, 1142 [4th Dept 2013]). Defendant submitted, among other things, the affidavit of its expert anesthesiologist who opined, to a reasonable degree of medical certainty, that defendant's staff involved in plaintiff's care and treatment complied at all times with the applicable standard of care and that, while plaintiff experienced an adverse respiratory event, such event was not caused by an excess administration of morphine and none of plaintiff's alleged injuries was proximately caused by any act or omission of defendant or its staff (see id.). The affidavit of defendant's expert anesthesiologist "directly address[ed] each of the allegations of [medical malpractice and] negligence in plaintiff[s'] bill[] of particulars . . . , and [his] opinion[ is] supported by [plaintiff's] medical records," including a CT scan taken shortly after the adverse respiratory event that showed no evidence of acute brain injury (id.; see Alvarez v Prospect Hosp., 68 NY2d 320, 325 [1986]).
The burden thus shifted to plaintiffs to raise triable issues of fact by "submit[ting] a physician's affidavit establishing both that defendant[] deviated from the applicable standard of care and that such deviation was a proximate cause of plaintiff's injuries" (Occhino, 151 AD3d at 1871). Initially, we agree with plaintiffs that they raised a triable issue of fact whether defendant deviated from the applicable standard of care. Plaintiffs submitted the affidavit of their expert neurologist/pharmacist who opined, among other things, that plaintiff had numerous risk factors that placed her at increased risk for respiratory depression, thereby requiring additional monitoring that defendant failed to provide, and that defendant deviated from the applicable standard of care given the delay between the discovery that plaintiff was experiencing an adverse respiratory event and the administration of the emergency opioid-reversing medication. The conflicting opinions of the experts for plaintiffs and defendant with respect to defendant's alleged deviations from the accepted standard of medical care " present credibility issues that cannot be resolved on a motion for summary judgment' " (Fay v Satterly, 158 AD3d 1220, 1221 [4th Dept 2018]; see Lamb v Stephen M. Baker, O.D., P.C., 152 AD3d 1230, 1230 [4th Dept 2017]).
We nonetheless agree with defendant that plaintiffs' submissions are insufficient to raise a triable issue of fact whether any such deviation was a proximate cause of plaintiff's alleged injuries. Here, plaintiffs' expert did not adequately address defendant's prima facie showing that there was no evidence of a brain injury resulting from the adverse respiratory event (see Fernandez v Moskowitz, 85 AD3d 566, 567-568 [1st Dept 2011]). In particular, plaintiffs' expert failed to address or explain the results of the CT scan performed shortly after the adverse respiratory event that showed "no evidence of acute brain injury," and he did not address the results of an MRI taken a few days after plaintiff's discharge from the ICU that was "[u]nremarkable" and "fail[ed] to demonstrate an acute ischemic event" (see Callistro v Bebbington, 94 AD3d 408, 411 [1st Dept 2012], affd 20 NY3d 945 [2012]; Montilla v St. Luke's-Roosevelt Hosp., 147 AD3d 404, 407 [1st Dept 2017]; Fernandez, 85 AD3d at 568). Instead, plaintiffs' expert asserted that "it is likely that [plaintiff] underwent brain damage . . . due to lack of oxygen to her brain" during the period between the discovery of her respiratory distress and the administration of the emergency opioid-reversing medication, and then assumed the existence of such an injury in opining that an immediate administration of such medication would have "lessen[ed] the injury to [plaintiff's] brain" (emphases added). We conclude that the conclusory and speculative theory of plaintiffs' expert that the adverse respiratory event resulted in brain damage that could therefore explain plaintiff's clinically observed symptoms is insufficient to raise an issue of fact (see Callistro, 94 AD3d at 411). Indeed, plaintiffs' expert "failed to support [his] opinion with a radiological study of plaintiff's brain or any other medical record demonstrating brain damage other than [the subsequent symptoms]" (id.; see also Montilla, 147 AD3d at 407). Moreover, while plaintiffs' expert relied on a physical therapy note stating that plaintiff's gait was unsteady and referenced later reevaluations by her treating neurologist, he failed to address the medical evidence submitted by defendant that plaintiff, upon her discharge from the ICU, had no complaints, was ambulatory with assistance, was alert and orientated, and was deemed in stable condition, and he further failed to explain the preliminary [*2]neurologic consultation report from a few days after discharge that was included in plaintiffs' own papers, in which plaintiff's treating neurologist noted that the MRI was normal, that plaintiff was intact neurologically, and that her symptoms could be attributable to postoperative myelopathy, i.e., a spinal cord disorder (see Callistro, 94 AD3d at 411). Based on the foregoing, we conclude that plaintiffs' submissions are insufficient to raise a triable issue of fact to defeat defendant's motion for summary judgment (see e.g. Montilla, 147 AD3d at 407; Callistro, 94 AD3d at 410-411).
Entered: July 5, 2019
Mark W. Bennett
Clerk of the Court