■ JAMES JOHNSON, Appellant, v JAMAICA HOSPITAL MEDICAL CENTER et al., Respondents. [800 NYS2d 609]—

In an action to recover damages for medical malpractice, the plaintiff appeals from a judgment of the Supreme Court, Queens County (Hart, J.), dated May 30, 2003, which, upon the granting of the defendants' motions pursuant to CPLR 4401 for judgment as a matter of law, made at the close of the evidence, dismissed the complaint.

Ordered that the judgment is reversed, on the law, the motions are denied, the complaint is reinstated, and a new trial is granted, with costs to abide the event.

On June 11, 1996, the plaintiff arrived at the emergency room of the defendant hospital with a gunshot wound which had severely fractured his tibia. The defendant Robert Rosenthal was chief of orthopedic surgery at the hospital and the attending orthopedic surgeon then on call in its emergency room. Rosenthal operated on the plaintiff's leg and, after removing the bullet and cleaning the wound, he attached an "external fixator" to the leg for the purpose of stabilizing the tibia and allowing it to heal. In order to do so, he drilled several pins into the bone above and below the fracture. Four days later, the plaintiff was discharged from the hospital with instructions to stay off the leg, to keep it dry, and not to touch the pins. Approximately two months later, the plaintiff developed a severe infection in the leg that required seven surgeries and hospitalization for 63 days.

The plaintiff commenced this action against the defendants to recover damages for medical malpractice. He alleged that the defendants were negligent in failing to give him appropriate discharge instructions regarding the proper maintenance of the external fixator pins. At the close of the evidence, the Supreme Court granted the defendants' motions pursuant to CPLR 4401 for judgment as a matter of law. We reverse.

A defendant's motion pursuant to CPLR 4401 should be granted only when, accepting the plaintiff's evidence as true, and according that evidence the benefit of every favorable inference that can reasonably be drawn from it, "there is no rational process by which the jury could find for the plaintiff against the moving defendant" (*Wong v Tang*, 2 AD3d 840 [2003]; *see DiGiovanni v Rausch*, 226 AD2d 420 [1996]).

Contrary to the defendants' contentions, the Supreme Court correctly determined that the plaintiff made out a prima facie case with respect to both Rosenthal's departure from the ac-

ceptable standard of care, and the vicarious liability of the defendant hospital. The plaintiff's expert testified that in 1996 the accepted standard of care for patients with external fixator pins was to instruct them, upon discharge, to clean the pin site wounds daily with either peroxide or soapy water, and that the defendants' instructions not to touch the pins at all represented an unacceptable practice and a departure from the applicable standard of care. Such evidence was sufficient to make out a prima facie case that Rosenthal deviated from the applicable standard of care (*see Roucek v Hewson*, 141 AD2d 897 [1988]; *cf. Pace v Jakus*, 291 AD2d 436, 436-437 [2002]).

Moreover, although Rosenthal was not an employee of the defendant hospital and therefore the hospital would not ordinarily be vicariously liable for his malpractice (*see Padula v Bucalo*, 266 AD2d 524 [1999]), "an exception to the general rule exists when a patient comes to the emergency room seeking treatment from the hospital and not from a particular physician of the patient's choosing" (*Orgovan v Bloom*, 7 AD3d 770, 771 [2004]; *see also Padula v Bucalo, supra* at 524-525). Here, the plaintiff offered evidence that he did not request treatment by any particular physician and that his case was assigned to Rosenthal on an emergency basis. Such evidence was sufficient to make out a prima facie case against the defendant hospital (*see Hill v St. Clare's Hosp.*, 67 NY2d 72, 80-81 [1986]).

The Supreme Court erred, however, in concluding that the plaintiff failed to make out a prima facie case regarding causation. Rosenthal himself testified that when the plaintiff first presented with osteomyelitis, there was evidence of infection at one of the four pin sites, as well as in the original bullet wound and in the plaintiff's knee. On cross-examination, he testified that on the day the plaintiff was readmitted to the hospital for the infection, he presented with "[p]us coming out of the opening by the pin, coming out alongside the pin," and that "[t]his was one of the 4 pins, this would have been one of the pins above the fracture." Moreover, the plaintiff's expert testified that although the risk of an infection at the pin site was ordinarily between six to eight percent, it increased approximately fourfold in the absence of daily cleansing. "In a medical malpractice action, where causation is often a difficult issue, a plaintiff need do no more than offer sufficient evidence from which a reasonable person might conclude that it was more probable than not that the injury was caused by the defendant" (*Holton v Sprain Brook Manor Nursing Home*, 253 AD2d 852 [1998]; *see also Healy v Spector*, 287 AD2d 541 [2001]; *Minelli v Good Samaritan Hosp.*, 213 AD2d 705, 706 [1995]).

The evidence offered by the plaintiff that his failure to clean the pin site wounds was due to the defendants' inadequate discharge instructions and resulted in a fourfold increase in the risk of the infection he subsequently developed was sufficient to establish, prima facie, that it was more probable than not that his infection was caused by the defendants' negligence (*see Pasquale v Miller*, 194 AD2d 597 [1993]; *see also Jump v Facelle*, 275 AD2d 345, 346 [2000]; *Luneburg v Wenig*, 256 AD2d 389, 389-390 [1998]). Accordingly, the Supreme Court should not have dismissed the complaint. S. Miller, J.P., Krausman, Mastro and Fisher, JJ., concur.