■ DELORES JOHNSON, Appellant, v ISRAEL JACOBOWITZ et al., Respondents, et al., Defendant. [883 NYS2d 730]—In an action to recover damages for medical malpractice, etc., the plaintiff appeals from stated portions of an order of the Supreme Court, Kings County (Levine, J.), dated June 22, 2007.

In an action to recover damages for medical malpractice, etc., the defendants Israel Jacobowitz and New York Cardiothoracic Surgeons, P.C., appeal, as limited by their brief, from so much of a judgment of the Supreme Court, Kings County (Levine, J.), entered August 21, 2008, as, upon a jury verdict, and upon the denial of their motion pursuant to CPLR 4404 (a) to set aside the jury verdict and for judgment as a matter of law or, in the alternative, for a new trial on the ground that the verdict was contrary to the weight of the evidence, is in favor of the plaintiff and against them in the principal sum of $55,588.20, and the plaintiff cross-appeals, as limited by her notice of appeal and brief, from so much of the same judgment as, upon so much of an order of the same court dated November 25, 2005, as granted the defendants' motion in limine to preclude her from introducing evidence that the defendants Israel Jacobowitz and Mario Sabado did not have the proper credentials to perform a certain procedure, upon the granting of the defendant's motion, in effect, pursuant to CPLR 4401 to dismiss so much of the complaint as sought to recover damages for pain and suffering, made at the close of her case, upon a jury verdict only awarding her damages for funeral expenses and loss of parental guidance, is in favor of her and against the defendants Israel Jacobowitz and New York Cardiothoracic Surgeons, P.C., in the principal sum of only $55,588.20. The cross appeal from the judgment brings up for review stated portions of an order of the same court dated June 22, 2007 (*see Johnson v Jacobowitz,* 65 AD3d 610 [2009] [decided herewith]).

Ordered that the judgment is affirmed, without costs or disbursements.

The plaintiff's decedent, 70-year-old Evangeline Johnson, had undergone two prior mitral valve surgeries and had suffered a stroke prior to her admission to Maimonides Medical Center (hereinafter Maimonides) on April 21, 2001. In one of her prior surgeries, her mitral valve was replaced with a metal valve. At Maimonides, the decedent was diagnosed with a clot on the metal valve, which necessitated surgery because of the danger that the clot could break off and block a blood vessel. Dr. Israel Jacobowitz was to perform the surgery. He ultimately did so, assisted by the defendant Dr. Mario Sabado, after the decedent's transfer to Downstate Medical Center, utilizing a relatively new technology called "heartport," which was sometimes utilized as an alternative for the traditional aortal clamp.

After the surgery, the decedent did not wake up. Five days

later, on May 5, 2001, she died of a severe anoxic injury to her brain. The decedent's husband, David Johnson, commenced this action, individually, and as administrator of his wife's estate, against Jacobowitz, Sabado, and New York Cardiothoracic Surgeons, P.C. (hereinafter collectively the defendants), asserting causes of action alleging medical malpractice and lack of informed consent. The decedent's daughter, Delores Johnson, was later substituted as administrator of the estate, and the caption was amended accordingly.

Prior to trial, in an order dated November 25, 2005, the Supreme Court, inter alia, granted the defendants' motion in limine to preclude the plaintiff from introducing evidence that Jacobowitz and Sabado did not have the proper credentials to perform the heartport procedure during the surgery.

The matter proceeded to trial in March 2007. At the close of the plaintiffs' case, the defendants moved, inter alia, in effect, pursuant to CPLR 4401 to dismiss so much of the complaint as sought to recover damages for pain and suffering. The court granted the motion, finding that the evidence did not support such a claim. At the close of the plaintiff's case, the court granted Sabado's motion pursuant to CPLR 4401 to dismiss the complaint insofar as asserted against him.

The jury returned a verdict against the remaining defendants, Jacobowitz and his corporation, New York Cardiothoracic Surgeons, P.C. (hereinafter NY Cardio), finding that they were liable for medical malpractice and lack of informed consent, and awarding the plaintiff the principal sum of $55,588.20 for funeral expenses and loss of parental guidance.

After the trial, Jacobowitz and NY Cardio moved, pursuant to CPLR 4404 (a) to set aside the verdict and for judgment as a matter of law, or, in the alternative, for a new trial on the ground that the verdict was contrary to the weight of the evidence. The plaintiff moved for a new trial on so much of the complaint as sought to recover damages for pain and suffering. In an order dated June 22, 2007, the court, among other things, denied the plaintiff's motion.

On August 21, 2008, the court entered judgment in favor of the plaintiff and against Jacobowitz and NY Cardio in the principal sum of $55,588.20, and dismissed the action against Sabado. Jacobowitz and NY Cardio now appeal from the judgment, and the plaintiff cross-appeals.

"To establish a prima facie case of liability in a medical malpractice action, the plaintiff must prove that the defendant physician departed from good and accepted standards of medical practice and that the departure was the proximate cause of the

injury or damage" (*Biggs v Mary Immaculate Hosp.*, 303 AD2d 702, 703 [2003]; *see Elias v Bash*, 54 AD3d 354, 355 [2008]; *Salmeri v Beth Israel Med. Ctr.-Kings Highway Div.*, 39 AD3d 841 [2007]; *Prete v Rafla-Demetrious*, 224 AD2d 674, 675 [1996]). To meet this burden, a plaintiff ordinarily presents expert testimony showing that the defendant's conduct deviated from the requisite standard of care (*see Salmeri v Beth Israel Med. Ctr.-Kings Highway Div.*, 39 AD3d at 841; *Texter v Middletown Dialysis Ctr., Inc.*, 22 AD3d 831 [2005]). "In order to establish a prima facie case in a medical malpractice action, where causation is almost always a difficult issue, a plaintiff need do no more than offer sufficient evidence from which a reasonable person might conclude that it was more probable than not that the injury was caused by the defendant" (*Borawski v Huang*, 34 AD3d 409, 410 [2006] [internal quotation marks omitted]; *see Flaherty v Fromberg*, 46 AD3d 743, 745 [2007]). Here, there was legally sufficient evidence to support the jury verdict finding that Jacobowitz and NY Cardio deviated from accepted medical practice in utilizing the heartport technology on the decedent, and in performing the procedure.

Moreover, the liability verdict was not contrary to the weight of the evidence. Where both the plaintiff and the defendants presented party, eyewitness, and expert testimony in support of their respective positions, it was within the province of the jury to determine the credibility of those witnesses (*see Flaherty v Fromberg*, 46 AD3d at 745; *Velez v Policastro*, 1 AD3d 429, 430 [2003]; *Landau v Rappaport*, 306 AD2d 446 [2003]).

To demonstrate a lack of informed consent, the plaintiff is required to establish that (1) the defendant failed to disclose the material risks, benefits, and alternatives to the surgery which a reasonable medical practitioner under similar circumstances would have disclosed, in a manner permitting the plaintiff to make a knowledgeable evaluation, and (2) a reasonably prudent person in the plaintiff's position would not have undergone the surgery if he or she had been fully informed (*see* Public Health Law § 2805-d [1], [3]; *Sarwan v Portnoy*, 51 AD3d 655, 656-657 [2008]; *Davis v Nassau Ophthalmic Servs.*, 232 AD2d 358 [1996]). The alleged qualitative insufficiency of the consent must be supported by expert medical testimony (*see Davis v Nassau Ophthalmic Servs.*, 232 AD2d at 358).

Contrary to the defendants' contention, the qualitative insufficiency of the consent given by the decedent's family was established by expert medical testimony (*see* CPLR 4401-a; *Sarwan v Portnoy*, 51 AD3d at 656-657) and there was sufficient evidence from which the jury could conclude that a fully

informed, reasonably prudent person in its position would not have permitted the decedent to undergo the surgery if fully informed (*see Sarwan v Portnoy,* 51 AD3d at 656-657; *cf. Davis v Nassau Ophthalmic Servs.,* 232 AD2d at 358).

The court correctly granted the defendants' motion in limine to preclude the plaintiff from introducing evidence that Jacobowitz did not have the proper credentials to perform the heartport procedure, since informed consent does not require disclosure of the qualifications of personnel providing the professional treatment (*see* Public Health Law § 2805-d; *Abram v Children's Hosp. of Buffalo,* 151 AD2d 972 [1989]; *Zimmerman v New York City Health & Hosps. Corp.,* 91 AD2d 290 [1983]; *Henry v Bronx Lebanon Med. Ctr.,* 53 AD2d 476 [1976]).

A claim to recover damages for conscious pain and suffering requires proof that the injured party experienced some level of cognitive awareness following the injury (*see McDougald v Garber,* 73 NY2d 246, 255 [1989]; *Walsh v Staten Is. Obstetrics & Gynecology Assoc.,* 193 AD2d 672 [1993]). Here, the plaintiffs failed to come forward with sufficient evidence of awareness on the part of the decedent to make out a prima facie case with respect to conscious pain and suffering, and the trial court properly declined to submit that claim to the jury (*see Cummins v County of Onondaga,* 84 NY2d 322, 324-326 [1994]; *Zurita v McGinnis,* 7 AD3d 618, 619 [2004]; *Cleary v LJR Assoc.,* 198 AD2d 394 [1993]; *Williams v City of New York,* 169 AD2d 713, 714 [1991]).

The plaintiffs' remaining contentions are either academic in light of the foregoing or without merit. Mastro, J.P., Dillon, Santucci and Balkin, JJ., concur.