■ BARBARA GOLDBERG et al., Appellants, v ISADORE HOROWITZ, Respondent. [901 NYS2d 95]—

In an action, inter alia, to recover damages for medical malpractice, etc., the plaintiffs appeal from a judgment of the Supreme Court, Queens County (Hart, J.), entered July 30, 2008, which, upon an order of the same court dated May 20, 2008, granting the defendant's motion pursuant to CPLR 4401 for judgment as a matter of law made at the close of the evidence, is in favor of the defendant and against them dismissing the complaint.

Ordered that, on the Court's own motion, the notice of appeal from the order dated May 20, 2008, is deemed a premature notice of appeal from the judgment (*see* CPLR 5520 [c]); and it is further,

Ordered that the judgment is reversed, on the law, with costs, the order dated May 20, 2008, is vacated, the defendant's motion is denied, the complaint is reinstated, and a new trial is granted.

On the morning of July 16, 2001, the late William Usdan (hereinafter the decedent) visited his primary care physician, the defendant, Isadore Horowitz, complaining primarily of chest congestion and pain in his neck and left shoulder. The decedent had a history of heart disease and had undergone triple-bypass surgery in 1989, but he told the defendant that the pain he was

experiencing did not remind him of his previous cardiac symptoms. At approximately 11:51 A.M., the defendant, who specialized in internal medicine, performed an electrocardiogram (hereinafter EKG) upon the decedent. Although the defendant did not rule out the possibility that there was a cardiac cause for the decedent's shoulder pain, he sent the decedent home because he believed that the EKG showed no evidence of acute myocardial ischemia. Approximately 12 hours later, the decedent suffered a massive heart attack. Following the July 2001 heart attack, the decedent's physical condition declined, and he died on June 22, 2004.

At trial in May 2008, the plaintiffs primarily relied upon the testimony of a physician board-certified in internal medicine, who opined that the July 16, 2001, EKG performed in the defendant's office showed abnormalities indicative of ischemia, or lack of blood flow, to a segment of the heart. According to the plaintiffs' expert, this was ischemia at rest, a condition which is more dangerous than exercise-induced ischemia, because it signifies that an area of the heart is losing its blood supply without any provocation. The plaintiff's expert maintained that the abnormalities revealed by the EKG indicated a blockage of a vein which was supplying blood to an artery of the heart. The plaintiffs' expert further testified that the defendant departed from good and accepted standards of medical practice by failing to recognize ischemia at rest and to direct the decedent to a hospital emergency room where various forms of medical intervention would have been available to either prevent the heart attack from occurring, or reduce the amount of muscle damage to the heart.

In contrast, the decedent's treating cardiologist, who was subpoenaed to testify on the defendant's behalf, and the defendant's expert witness, also a cardiologist, both maintained that to the extent that the July 16, 2001, EKG was capable of being properly interpreted, the results of that EKG were similar to the results of EKG tests which the decedent had undergone in the past, and did not show any changes indicative of an acute ischemic event. Although the cardiologists did not believe that the decedent was in need of immediate cardiac intervention at the time the subject EKG was performed, they did not rule out the possibility that the decedent could have had a better outcome if he had arrived in the hospital emergency room on the afternoon of July 16, 2001, rather than close to midnight.

At the close of evidence, the defendant moved pursuant to CPLR 4401 for judgment as a matter of law, and the Supreme Court granted his motion, concluding that there was insufficient

proof that the alleged departure in failing to send the decedent to the emergency room was a proximate cause of his heart attack and the injuries he sustained as a result of the heart attack. We reverse.

The required elements of proof in a medical malpractice action are a deviation or departure from good and accepted standards of medical practice, and evidence that such departure proximately caused the plaintiff's injuries (*see Dockery v Sprecher*, 68 AD3d 1043 [2009]; *Alicea v Ligouri*, 54 AD3d 784, 785 [2008]; *Bryan v Staten Is. Univ. Hosp.*, 54 AD3d 793, 794 [2008]; *Flaherty v Fromberg*, 46 AD3d 743, 745 [2007]). Generally, expert testimony is necessary to prove a deviation from accepted standards of medical care and to establish proximate cause (*see Dockery v Sprecher*, 68 AD3d at 1045; *Alicea v Ligouri*, 54 AD3d at 785; *Bryan v Staten Is. Univ. Hosp.*, 54 AD3d at 794). A trial court may only grant judgment as a matter of law in the defendant's favor pursuant to CPLR 4401 where it finds, upon the evidence presented, that there is no rational process by which the jury could find in the plaintiff's favor (*see Szczerbiak v Pilat*, 90 NY2d 553, 556 [1997]; *Dockery v Sprecher*, 68 AD3d at 1045; *Fellin v Sahgal*, 35 AD3d 800, 801 [2006]; *Velez v Goldenberg*, 29 AD3d 780, 781 [2006]; *Johnson v Jamaica Hosp. Med. Ctr.*, 21 AD3d 881, 882 [2005]; *Wong v Tang*, 2 AD3d 840 [2003]). In making this evaluation, "the trial court must afford the party opposing the motion every inference which may properly be drawn from the facts presented, and the facts must be considered in a light most favorable to the nonmovant" (*Szczerbiak v Pilat*, 90 NY2d at 556).

Applying these principles here, we find that the testimony of the plaintiff's expert physician provided a rational basis upon which the jury could have found that the defendant departed from accepted practice in failing to recognize that the EKG performed in his office indicated that the decedent was suffering from ischemia at rest, and warranted immediately referring the decedent to the hospital emergency room (*see Johnson v Jacobowitz*, 65 AD3d 610 [2009]; *Alicea v Ligouri*, 54 AD3d at 785; *Bryan v Staten Is. Univ. Hosp.*, 54 AD3d at 794; *Wong v Tang*, 2 AD3d 840 [2003]). Although both cardiologists who testified on the defendant's behalf disagreed with the conclusions reached by the plaintiff's expert and the methodology he utilized in interpreting the subject EKG, the conflicting expert testimony presented a question of fact for the jury to resolve (*see Johnson v Jacobowitz*, 65 AD3d at 613; *Salmeri v Beth Israel Med. Ctr.-Kings Highway Div.*, 39 AD3d 841, 842 [2007]; *Speciale v Achari*, 29 AD3d 674, 675 [2006]).

Contrary to the Supreme Court's determination, the evidence presented at trial also provided a rational basis upon which the jury could have found that the defendant's alleged departure was a proximate cause of the decedent's injuries. "In a medical malpractice action, where causation is often a difficult issue, a plaintiff need do no more than offer sufficient evidence from which a reasonable person might conclude that it was more probable than not" that the defendant's deviation was a substantial factor in causing the injury (*Johnson v Jamaica Hosp. Med. Ctr.*, 21 AD3d at 883 [internal quotation marks omitted]; *see Alicea v Ligouri*, 54 AD3d at 785; *Flaherty v Fromberg*, 46 AD3d at 745; *Bunea v Cahaly*, 37 AD3d 389, 390-391 [2007]; *Holton v Sprain Brook Manor Nursing Home*, 253 AD2d 852 [1998]). A plaintiff's evidence of proximate cause may be found legally sufficient even if his or her expert is unable to quantify the extent to which the defendant's act or omission decreased the plaintiff's chance of a better outcome or increased the injury, "as long as evidence is presented from which the jury may infer that the defendant's conduct diminished the plaintiff's chance of a better outcome or increased [the] injury" (*Alicea v Ligouri*, 54 AD3d at 786 [internal quotation marks omitted]; *see Flaherty v Fromberg*, 46 AD3d at 745; *Jump v Facelle*, 275 AD2d 345, 346 [2000]). Here, the evidence presented at trial was sufficient to have allowed the jury to infer that the decedent would have had a better outcome if the defendant had referred him to the hospital emergency room on the afternoon of July 16, 2001, and the court thus erred in granting the defendant's motion for judgment as a matter of law on this basis (*see Dockery v Sprecher*, 68 AD3d at 1046; *Alicea v Ligouri*, 54 AD3d at 786; *Flaherty v Fromberg*, 46 AD3d at 745; *Jump v Facelle*, 275 AD2d at 346). Skelos, J.P., Eng, Belen and Austin, JJ., concur.