*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:   December 22, 2016                521965
_____

EVON MAJID,
                    Appellant,

       v                                      OPINION AND ORDER

ELAINE CHEON-LEE et al.,
                    Respondents,
                    et al.,
                    Defendant.
_____

Calendar Date:   October 12, 2016

Before:   Peters, P.J., McCarthy, Lynch, Rose and Mulvey, JJ.

_____

       Conway & Kirby, PLLC, Latham (Andrew W. Kirby of counsel),
for appellant.

       Thuillez, Ford, Gold, Butler & Monroe, LLP, Albany (Daisy
Ford Paglia of counsel), for respondents.

_____

Peters, P.J.

       Appeal from a judgment of the Supreme Court (Kramer, J.),
entered July 2, 2015 in Schenectady County, which granted a
motion by defendants Elaine Cheon-Lee and Carenet Medical Group,
P.C. for a directed verdict.

       In 2006, plaintiff was experiencing pain in her abdominal
area and presented to defendant Elaine Cheon-Lee, an
obstetrician-gynecologist, for treatment.  After an ultrasound
revealed a cyst on plaintiff's right ovary, Cheon-Lee performed a
surgery to remove the ovary and plaintiff's right fallopian tube.
Cheon-Lee also diagnosed plaintiff with endometriosis, a painful
gynecologic condition.  When subsequent treatments proved

unsuccessful in alleviating plaintiff's pain and heavy bleeding, plaintiff underwent a second surgery on March 2, 2009, also performed by Cheon-Lee, to remove her uterus, left ovary and left fallopian tube.  At the time of plaintiff's second surgery, Cheon-Lee was an employee, officer and/or shareholder of defendant Carenet Medical Group, P.C.

In the weeks following the March 2009 surgery, plaintiff complained of pain, nausea, fevers and vomiting to Cheon-Lee, who eventually ordered a blood test, discovered an abnormality and referred plaintiff to her primary care physician.  On May 12, 2009, a CAT scan revealed that plaintiff's urine was not properly draining out of her left kidney – a condition referred to as hydronephrosis – because her left ureter, a tube which brings urine from the kidney to the urinary bladder, was blocked. Attempts to treat plaintiff's kidney proved ineffective and, in November 2013, plaintiff underwent a surgery to remove her left kidney.

Plaintiff commenced this action in August 2011, alleging, among other things, that Cheon-Lee was negligent in performing the 2009 surgery and in failing to detect or diagnose the blocked ureter.  Plaintiff also relied on the doctrine of res ipsa loquitur to establish the fault, liability and negligence of Cheon-Lee.  At trial, plaintiff presented expert testimony to support three theories of negligence: that Cheon-Lee failed to identify and isolate the left ureter during the surgery, that she failed to recognize an injury to plaintiff's left ureter during the surgery and that she failed to recognize the injury to the left ureter during the postoperative period.  At the close of plaintiff's proof, Cheon-Lee and Carenet Medical Group (hereinafter collectively referred to as defendants) moved for a directed verdict, contending that plaintiff failed to establish that Cheon-Lee's alleged negligence proximately caused plaintiff's injuries.  Supreme Court agreed, finding that the testimony of plaintiff's expert that Cheon-Lee's alleged negligence in clamping, cutting and suturing plaintiff's left ureter was unsupported by the record, granted defendants' motion and dismissed the complaint against them in its entirety.

Plaintiff appeals.[1]

A directed verdict is only appropriate "when, viewing the evidence in a light most favorable to the nonmoving part[y] and affording such part[y] the benefit of every inference, there is no rational process by which a jury could find in favor of the nonmovant[]" (Peluso v C.R. Bard, Inc., 124 AD3d 1027, 1028 [2015] [internal quotation marks and citation omitted]; see Clune v Moore, 142 AD3d 1330, 1331 [2016]). "[A] plaintiff asserting a medical malpractice claim must demonstrate that the doctor deviated from acceptable medical practice, and that such deviation was a proximate cause of the plaintiff's injury" (James v Wormuth, 21 NY3d 540, 545 [2013]; see Mazella v Beals, 27 NY3d 694, 705 [2016]). "[T]o establish proximate causation, the plaintiff must demonstrate that the defendant's deviation from the standard of care was a substantial factor in bringing about the injury" (Clune v Moore, 142 AD3d at 1331 [internal quotation marks and citation omitted]; see Wild v Catholic Health Sys., 21 NY3d 951, 954-955 [2013]). A plaintiff in a medical malpractice action may also rely on the doctrine of res ipsa loquitur (see Weeks v St. Peter's Hosp., 128 AD3d 1159, 1161-1162 [2015]), which "permits the jury to infer negligence and causation sufficient to establish a prima facie case based on circumstantial evidence" (Mack v Lydia E. Hall Hosp., 121 AD2d 431, 432 [1986]; see Frank v Smith, 127 AD3d 1301, 1302 [2015]). "Notably, a plaintiff is not required to eliminate all other possible causes of the injury in order to establish a prima facie case" of medical malpractice (Turcsik v Guthrie Clinic, Ltd., 12 AD3d 883, 886 [2004] [citation omitted]; see Kambat v St. Francis Hosp., 89 NY2d 489, 494 [1997]; Schneider v Kings Hwy. Hosp. Ctr., 67 NY2d 743, 744 [1986]).

Initially, we find that Supreme Court properly concluded that plaintiff failed to establish as a matter of law that Cheon-Lee's alleged negligence in failing to identify and isolate plaintiff's left ureter caused her alleged injuries. It is

---

[1] Supreme Court also granted a motion by defendant Danilo G. Cosico for a directed verdict, and plaintiff does not challenge the granting of said motion.

undisputed that, when removing the ovary and fallopian tube, the surgeon must cut the infundibulopelvic (hereinafter IP) ligament, which attaches the ovary to the pelvic wall. Because the IP ligament carries with it significant blood supply, prior to cutting it, it must be clamped off to prevent any bleeding. After the ligament is cut, each of its ends must be sutured to control bleeding.

At trial, John DiOrio, a board certified obstetrician-gynecologist who testified as plaintiff's expert, repeatedly and "unequivocal[ly]" asserted that plaintiff's injuries were caused by Cheon-Lee's failure to identify plaintiff's left ureter during the March 2009 surgery, which Cheon-Lee then clamped and cut together with the left IP ligament. In DiOrio's own words:

> "The ureter was clamped, along with the IP ligament, and clamped and cut and then tied, which is how the ureter was damaged. This didn't come up from the moon. The ureter was clamped, let me be very clear on this, . . . with a clamp when [Cheon-Lee] clamped the IP ligament. . . . With that, she then clamped the ureter, because she didn't identify it. Once you clamp it, . . . you cut or transect, and then you put a suture ligature tie around it. We refer to the one-two-threes of those steps. Unfortunately, Dr. Cheon-Lee . . . did not ID the ureter, so the ureter was included in that maneuver, and thus we are here today with [plaintiff's] missing kidney."

This conclusion, however, was in direct conflict with plaintiff's own proof. Plaintiff's treating urologist, Brian Murray, testified that, on August 12, 2009, when performing surgery to remove the drainage tube and insert a stent between plaintiff's left kidney and bladder, he accessed and visualized plaintiff's left ureter. According to Murray, the ureter had not been cut, as evidenced by the ureter being "still one piece" and

the absence of any suture material in it.  Murray's conclusion was supported by a pathologist's report to the effect that the ureter had not been cut but rather appeared to have collapsed onto itself, causing the blockage.  Inasmuch as the opinion of plaintiff's expert was in direct conflict with plaintiff's own proof, Supreme Court properly determined that there was a complete absence of evidence with respect to causation pertaining to plaintiff's first theory of negligence (see Peluso v C.R. Bard, Inc., 124 AD3d at 1030-1031; Nichols v Stamer, 49 AD3d 832, 833-834 [2008]; Brown v Bauman, 42 AD3d 390, 392 [2007]; Lipsius v White, 91 AD2d 271, 279 [1983]).

However, Supreme Court erred when it dismissed the complaint in its entirety, as plaintiff's trial proof established a prima facie case of medical malpractice on two other theories of negligence — namely, that Cheon-Lee failed to recognize an injury to plaintiff's left ureter both when performing the surgery and during the postoperative period.[2]  With respect to the former theory, DiOrio testified that Cheon-Lee's failure to perform a cystoscopy in conjunction with a dye test during the March 2009 surgery represented a deviation from the standard of care.  Specifically, he opined that plaintiff's medical record revealed that Cheon-Lee used a dye test during the surgery, which was indicative of concern about possible damage to plaintiff's left ureter.  According to DiOrio, under the circumstances in which the dye test was administered, the test itself would not have revealed an injury to the ureter.  Rather, at that point, the standard of care mandated that Cheon-Lee perform a cystoscopy, which, according to DiOrio, is a quick, simple method of examining the lining of the bladder and the ureter for potential damage.  Had Cheon-Lee performed this technique, DiOrio opined, she "would have identified the injury, urology would have been called in and [plaintiff] would have had her repair on the

_____

[2]  We reject defendants' contention that plaintiff failed to preserve this argument for our review, as plaintiff opposed the motion for a directed verdict, which, notably, was limited to the issue of causation with regard to only one theory of liability related to the failure to identify and isolate the ureter (compare Rodriguez v Ford Motor Co., 106 AD3d 525, 526 [2013]).

table" and would not have subsequently suffered from a loss of kidney function and ultimately a loss of her left kidney. In our view, this was a viable theory of liability that should have gone to the jury (cf. Bunea v Cahaly, 37 AD3d 389, 390-391 [2007]; compare Golden v Pavlov-Shapiro, 138 AD3d 1406, 1406 [2016]).

Plaintiff's final theory of liability was premised on Cheon-Lee's alleged failure to diagnose the blockage of plaintiff's left ureter during her postoperative visits. It is well settled that, "[w]here, as here, the plaintiff alleges that the defendant negligently failed or delayed in diagnosing and treating a condition, a finding that the negligence was a proximate cause of an injury to the patient may be predicated on the theory that the defendant thereby 'diminished [the patient's] chance of a better outcome'" (Clune v Moore, 142 AD3d at 1331, quoting Wolf v Persaud, 130 AD3d 1523, 1525 [2015]; see Goldberg v Horowitz, 73 AD3d 691, 694 [2010]; Borawski v Huang, 34 AD3d 409, 410 [2006]).

Plaintiff's postoperative discharge note, dated March 5, 2009, indicated as follows: "Post-op course complicated by nausea. Question, secondary to narcotics? Resolved post-op day number three." Cheon-Lee conceded that the "question mark" in that note signified that she was unsure whether plaintiff's nausea was related to narcotic medications. In the days and weeks following the March 2009 surgery, plaintiff again complained to Cheon-Lee of pain, nausea, fatigue and loss of appetite. Cheon-Lee likewise admitted in her testimony that plaintiff presented with these symptoms and that she did not diagnose plaintiff's ureteral obstruction, and acknowledged that she does not routinely diagnose and treat ureteral obstructions. Notably, DiOrio testified that nausea, vomiting, malaise, poor appetite and pain in the left flank are all symptoms of a ureteral obstruction, and that Cheon-Lee "had an absolute responsibility in the early postoperative period at the hospital to recognize the fact that things were not quite right." DiOrio, as well as plaintiff's expert urologist, specified that time was of the essence because "[t]he sooner the injury is picked up, the higher the rate of success of the ureter being connected appropriately and the kidney being saved." DiOrio opined that, by failing to diagnose the subject injury and provide proper care

to plaintiff during the postoperative period, Cheon-Lee breached the standard of care, causing plaintiff's injuries.

"Whether or not res ipsa loquitur was applicable here, plaintiff presented sufficient evidence of negligence to go to the jury" on two of her three theories of liability (Lo Presti v Hospital for Joint Diseases, 275 AD2d 201, 203 [2000]; see Babits v Vassar Bros. Hosp., 287 AD2d 670, 671-672 [2001]).  Upon the evidence submitted, Supreme Court properly rejected plaintiff's first theory of liability as a matter of law at the close of plaintiff's proof, yet provided no explanation for dismissing the entire complaint, and we can perceive none under the circumstances of this case given the existence of two viable and independent theories of liability that were supported by sufficient trial proof (cf. Law v Moskowitz, 279 AD2d 844, 845-847 [2001]).  Accordingly, plaintiff is entitled to a new trial as against defendants on the second and third theories of liability.

McCarthy, Lynch, Rose and Mulvey, JJ., concur.

ORDERED that the judgment is reversed, on the law, without costs, motion denied and matter remitted to the Supreme Court for a new trial.

ENTER:

Robert D. Mayberger
Clerk of the Court