| |
|---|
| **Rancourt v Semegran** |
| 2025 NY Slip Op 31723(U) |
| May 12, 2025 |
| Supreme Court, New York County |
| Docket Number: Index No. 450633/2020 |
| Judge: Judith N. McMahon |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

PRESENT: HON. JUDITH N. MCMAHON

-------------------------------------------------------------------------X

RUTH ANN RANCOURT AS ADMINISTRATRIX OF THE
ESTATE OF STACEY M. RANCOURT, DECEASED, AND
RUTH ANN RANCOURT, INDIVIDUALLY,

                                          **Plaintiff,**

                          **-against-**

ADAM SEMEGRAN, M.D., CAREMOUNT MEDICAL
P.C., PUTNAM HOSPITAL CENTER, CARERITE CENTERS,
LLC, EMERALD PEEK REHABILITATION AND NURSING
CENTER,

                                      **Defendants.**

-------------------------------------------------------------------------X

PART 30

INDEX NO: 450633/2020

MOTION DATE 5/1/2025

MOTION SEQ. NO. 001, 002

DECISION AND ORDER

The following e-filed documents, listed by NYSCEF document number (Motion 001) 88-113, 141-164, and 189-190 were read on this motion for SUMMARY JUDGMENT

The following e-filed documents, listed by NYSCEF document number (Motion 002) 114-139, 165-188, and 191-193 were read on this motion for SUMMARY JUDGMENT

Upon the foregoing papers, the motion for summary judgment by the defendants Adam Semegran, M.D. and Caremount Medical, P.C. (Motion Seq. No. 001) is granted to the extent that all of plaintiff's claims as contained in the Verified Bill of Particulars are severed and dismissed **except for** defendants' alleged failure to discharge decedent from Putnam Hospital Center with: **(1)** proper discharge and wound care instructions, **(2)** an established wound care regimen, **(3)** current wound cultures and recent wound assessment, **(4)** antibiotic therapy, and **(5)** scheduled follow up care.[1] The Court notes herein that plaintiff's Verified Bill of Particulars is

---

[1]    Plaintiff's expert, Dr. Freed, limited his opinion regarding Dr. Semegran's departures from the standard of care and proximate cause solely to those claims listed above. All other claims as contained in plaintiff's Verified Bills of Particulars are therefore dismissed.

[* 1]

sufficiently broad to include these claims. The balance of Motion Seq. No. 001 is denied. The motion for summary judgment by defendants West Ledge OP LLC d/b/a The Emerald Peek Rehabilitation and Nursing Center (hereinafter "Emerald Peek") and Carerite Centers, LLC ("Carerite") (Motion Seq. No. 002) is granted to the extent that the complaint and all cross claims against Carerite[2] are severed and dismissed. In addition, all claims made against Emerald Peek for alleged violations of the Public Health Law and/or other statutory/regulatory violations as contained in plaintiff's Verified Bill of Particulars (*see* NYSCEF Doc. No. 52, para. 3), all claims of negligent conduct on the part of Emerald Peek during decedent's March 30, 2017, episode of unresponsiveness, and any other claims alleged by plaintiff against Emerald Peek that were not addressed by Dr. Freed are severed and dismissed. The balance of Motion Seq. No. 002 is denied.

This medical malpractice and wrongful death action arises from the care and treatment rendered to the 45-year-old decedent, Stacey Rancourt, who died on August 22, 2017, at Montefiore Hospital.

It is undisputed that Ms. Rancourt presented to Putnam Hospital Center Emergency Department on February 14, 2017, with, *inter alia*, severe, malodorous and deep draining abscesses on her buttocks that had been draining for seven days. She had a low-grade fever, undiagnosed diabetes, a blood sugar of 409 mg/dL, an acute partially occlusive thrombus within the right popliteal vein, and sepsis. According to the hospital record (*see* NYSCEF Doc. No. 93) Ms. Rancourt, who was bed pound, was in diabetic ketoacidosis.

---

[2]     Carerite LLC provided only administrative services to Emerald Peek as well as to other facilities; it did not render care or treatment to decedent and had no ownership interest in Emerald Peek (*see* Affidavit in Support of Eric Cohen, Esq., General Counsel of Carerite; NYSCEF Doc. No. 129).

[* 2]

Broad-spectrum antibiotics were administered, and heparin was given for the deep vein thrombosis identified in decedent's lower leg. On February 15, 2017, Dr. Semegran, debrided the buttocks abscesses, and observed that two of the abscesses were interconnected. An intraoperative culture, reported by February 18, 2017, revealed MRSA. Due to incontinence of bowel and to assist in healing, on February 23, 2017, Dr. Semegran performed a laparoscopic loop left colostomy, to redirect feces. Several days later, Ms. Rancourt, who had spiked a fever of 103, was diagnosed with an acute kidney injury which was later determined to be due to sepsis. An x-ray showed questionable consolidation in the right lung lobe, so decedent was started on IV Ceftazidime and cultures were performed. The fever resolved and Ms. Rancourt was moved out of the ICU and onto a regular floor on March 13, 2017.

Ms. Rancourt remained at Putnam Hospital until March 16, 2017, at which time she was transferred to Emerald Peek Rehabilitation. Putnam's discharge diagnoses included gluteal abscess, acute onset sepsis, sepsis, MRSA infection, acute deep vein thrombosis of right popliteal vein, acute hyperglycemia, morbid obesity, and history of bronchitis.

Plaintiff's decedent remained at Emerald Peek from March 16th through March 30, 2017. On March 30th, while being moved via Hoyer lift, Ms. Rancourt became unresponsive (her blood pressure was 76/50 and blood sugar was 67) and she began exhibiting seizure symptoms that lasted 30 seconds. Emerald Peek emergently transferred her to New York Presbyterian Hudson Valley Hospital ("Hudson Valley") where she was admitted for severe sepsis/septic shock secondary to possible cellulitis of the decubiti in the buttocks and perirectal area and a urinary tract infection. Decedent remained at Hudson Valley from March 30th through April 29, 2017, for treatment of, *inter alia*, the UTI, arterial hypotension, chronic anemia, hyponatremia and kidney failure. She was then transferred to Calvary Hospital where she purportedly refused

[* 3]

BiPAP and efforts to get out of bed. From May 2, 2017, through June 13, 2017, decedent was confined Montefiore Medical Center. Blood cultures collected at Montefiore on May 2nd grew MRSA by May 5, 2017. On June 13th Ms. Rancourt returned to Calvary Hospital, where her prognosis continued to be poor. She was again admitted to Montefiore Medical Center on July 31, 2017, and remained a patient therein until she passed away on August 22, 2017, of multisystem organ failure.

All the defendants except for Putnam (*i.e.,* Dr. Semegran, his employer, Caremount Medical P.C., Emerald Peek and Carerite Centers LLC) move for summary judgment dismissing the complaint on the grounds that they did not deviate from accepted standards of care and, even if they had, no acts or omissions were a proximate cause of Ms. Rancourt's injuries or death--- considering her multiple comorbidities. Plaintiff opposes both motions.

To prevail on a motion for summary judgment, the proponent must make *prima facie* showing of entitlement to judgment as a matter of law, through admissible evidence demonstrating the absence of any material issue of fact (*see Klein v., City of New York*, 89 NY2d 833 (1996); *Ayotte v. Gervasio*, 81 NY2d 1062 (1993); *Alvarez v. Prospect Hospital*, 68 NY2d 320 (1986).

"Since summary judgment is the equivalent of a trial, it has been a cornerstone of New York jurisprudence that the proponent of a motion for summary judgment must demonstrate that there are no material issues of fact in dispute, and that it is entitled to judgment as a matter of law" (*Ostrov v. Rozbruch*, 91 AD3d 147 [1st Dept. 2012]).

In support of Motion Seq. No. 001, Dr. Semegran and his employer, Caremount Medical, P.C., submit the expert affirmations of a surgeon, Scott J. Belsley, M.D., F.A.C.S., F.A.S.M.B.S (*see* NYSCEF Doc. No. 98), and an infectious disease specialist, David Hirschwerk, M.D. (*see*

[* 4]

NYSCEF Doc. No. 97), both of whom opine that defendants did not deviate from accepted standards of care, and that nothing they did or failed to do proximately resulted in Ms. Rancourt's injury or death. Dr. Belsley opines that Dr. Semegran (Director of the Wound Care Center at Putnam Hospital Center), saved the decedent's life by appropriately: (1) performing an incision and drainage of "massive" posterior buttock perineal abscesses on February 15, 2017; (2) performing a loop colostomy on February 23, 2017; (3) taking a full and complete medical history; (4) exercising sound medical judgment by waiting until February 23rd to perform a diverting colostomy, since decedent's anticoagulation due to lower extremity thrombosis needed to be reversed prior to surgery, and (5) deferring to infectious disease specialist, Dr. Chitkara, concerning Ms. Rancourt's antibiotic regimen. Moreover, Dr. Belsley finds that nonparty infectious disease physician and Caremount employee, Dr. Neeta Chitkara, (6) prudently discontinued antibiotics once the MRSA infection was addressed, to prevent kidney and liver damage. Dr. Belsley is emphatic that decedent's discharge from Putnam on March 16, 2017, was not premature, and concludes that Dr. Semergan acted timely in performing two surgical procedures that resulted in the healing of multiple severe and deep abscesses, and that he gave Ms. Rancourt the possibility of a complete recovery. As for proximate cause, Dr. Belsley finds that Ms. Rancourt's untimely death resulted from "a stormy course post-discharge due to other medical issues which included pulmonary embolisms, PICC line sepsis twice, oxycodone use, pulmonary hypotension, chronic anemia, uncontrolled diabetes and immobility" (*id.*, para. 53).

In support of Caremount's motion relative to the care and treatment rendered by its employee, Dr. Chitkara, Dr. Hirschwerk opines that the infectious disease physician complied with the standard of care by: (1) ordering appropriate antibiotic therapy during decedent's hospitalization; (2) treating and not under-treating decedent's MRSA infection and sepsis; (3)

concluding that MRSA was isolated to decedent's buttocks since it was not found in the blood, as evidenced by negative blood cultures, and (4) adjusting decedent's antibiotic regimen in light of decreased kidney function. According to Dr. Hirschwerk, when Ms. Rancourt was released from Putnam her white blood cell count was normal, every organ system was improving, no further systemic antibiotics were indicated, and the PICC line had been removed.

In support of Motion Seq. No. 002, Carerite submits the affidavit from its General Counsel, Eric Cohen, Esq., (*see* NYSCEF Doc. No. 129), which is dispositive that Carerite did not direct, control, manage or supervise any care or treatment rendered to Ms. Rancourt, and that Carerite "provides administrative services to Emerald Peek as well as other facilities" (*id.,* para. 5). Here, the Court finds that summary judgment must be awarded to Carerite.

In support of its portion of the motion, Emerald Peek submits the affirmation of Albert Riddle, M.D. (*see* NYSCEF Doc. No. 127). Dr. Riddle, an internist with board certifications as a Medical Director and a Hospice Medical Director, opines to a reasonable degree of medical certainty that the care and treatment rendered to Ms. Rancourt during her two-week stay at Emerald was not "negligent, malpractice, or violative of PLH/statute/regulations" (*id,* para. 13). Dr. Riddle finds that Emerald Peek appropriately: (1) held off ordering anticoagulants, because the risk of excessive bleeding from Coumadin outweighed the risk of DVT/PE in Ms. Rancourt; (2) ordered all recommendations made by the wound care consultant and responded to any changes in decedent's condition; (3) assessed the risk of pressure ulcers as "moderate" pursuant to the Braden scale; (4) implemented an adequate pressure ulcer prevention care plan that included good nutrition/hydration, blood work, medications and treatments; (5) provided, among other things, a therapeutic air mattress; (6) changed the wound vac; (7) regularly assessed decedent's wounds and changed the dressings; (7) prevented, diagnosed and treated signs of

[* 6]

infection by administering medications and treatments as ordered; (8) implemented a care plan by cleansing the buttock wounds and applying medications, dressings, wound vac, zinc oxide ointment, protein supplements, and (9) encouraged turning and positioning. According to Dr. Riddle, Ms. Rancourt "never had any sign/symptom of infection while a resident of Emerald Peek...her temperature was always normal, and there was no noted redness or warmth at the wound sites...nor purulent discharge" (*id.*, para. 35). The first potential sign of infection or sepsis was low blood pressure on March 30, 2017, which if sepsis, was due to pneumonia and not infected wounds (*id.*, para. 37).

The affirmations of the defense experts were sufficient to meet defendants' *prima facie* burden of establishing the absence of a departure from good and accepted medical practice, or that any such departure was not a proximate cause of Ms. Rancourt's injuries and death (*Einach v. Lenox Hill Hosp.*, 160 AD3d 443 [1st Dept. 2018]).

"Where a defendant makes *a prima facie* case of entitlement to summary judgment dismissing a malpractice action by submitting an affirmation from a medical expert establishing that the treatment provided to the injured plaintiff comported with good and accepted practice the burden shifts to the plaintiff to present evidence in admissible form that demonstrates the existence of a triable issue of fact" (*Bartolacci-Meir v. Sassoon*, 149 AD3d 567 [1st Dept. 2017]; *see also DeCintio v. Lawrence Hosp*, 25 AD3d 320 [1st Dept. 2006]; *Ducasse v. New York City Health & Hosps. Corp.*, 148 AD3d 434 [1st Dept. 2017]; *Zuckerman v. City of New York*, 49 NY2d 557 (1980).

In opposition to both motions, plaintiff submits the expert affirmation of a surgeon, Jeffrey S. Freed, M.D. (*see* NYSCEF Doc. No. 172), who opines that Dr. Semegran of Caremount and the staff at Putnam deviated from the standard of care by failing to "implement a

[* 7]

comprehensive discharge protocol" (*id.,* para. 45), and that this "deficient patient hand-off by Dr. Semegran and Putnam led to the deterioration of Ms. Rancourt's wounds and subsequent infection-based systemic complications suffered by her" (*id.,* para. 54).

According to Dr. Freed, "the attending surgeon holds primary responsibility for continuity of care...[and] Dr. Semegran deviated from the standard of care by discharging Ms. Rancourt from Putnam to Emerald Peek without any wound care instructions, an established wound care regimen, current wound cultures, a recent wound assessment, and without antibiotic prescriptions, instructions, or follow up care scheduled" (*id.,* para. 53). Because Ms. Rancourt's critical wounds required "meticulous management," the lack of a structured wound care regimen led to the progression of an unchecked infection, "resulting in the worsening and deterioration of her wounds and overall systemic condition" (*id.,* para. 54).

Dr. Freed specifically disagrees with Dr. Belsley's and Dr. Hirschwerk's opinions that the Ms. Rancourt was "no longer septic" and was "infection free" at her release from Putnam, because her most recent culture---which revealed MRSA---was taken on February 18, 2017, a month before discharge. Dr. Freed opines within a reasonable degree of medical certainty, that Dr. Semegren and Putnam Hospital departed from good and accepted medical practice in failing to provide adequate or any discharge planning, and that this departure was a "substantial factor in allowing ongoing sepsis, septic shock, pain, suffering, multi-system organ failure, and the untimely death of Stacey Rancourt" (*id.,* paras. 58-59).

Dr. Freed further opines with a reasonable degree of medical certainty that Ms. Rancourt's untimely death was a direct result of the care and treatment she received at Emerald Peek, which departed from the standard of care by, *inter alia,* failing to note (1) regular turning or repositioning of Ms. Rancourt, despite Nurse Gallagher's creation of that task (*i.e.,* "change

[* 8]

resident's position every 2 hours to facilitate lung secretion movement and drainage") upon admission; (2) whether the wounds were cleansed, characterized (*i.e.*, ulcer staging, slough, eschar, deep tissue injury, granulation), or measured for length, width and depth; (3) whether any cultures, blood tests, imaging studies or targeted antibiotic therapy was provided, despite an active diagnosis of septicemia.

Dr. Freed disagrees with Dr, Riddle's opinion that Ms. Rancourt was "dying when she arrived at Emerald Peek" (*see* NYSCEF Doc. No. 127).

The court's function on this motion for summary judgment is issue finding rather than issue determination (*Sillman v. Twentieth Century Fox Film Corp.*, 3 NY2d 395 [1957]). Since summary judgment is a drastic remedy, it should not be granted where there is any doubt as to the existence of a triable issue (*Rotuba Extruders, Inc. v. Ceppos*, 46 NY2d 223 [1978]). The role of the court is to determine if bona fide issues of fact exist, and not to resolve issues of credibility (*Gaither v. Saga Corp.*, 203 AD2d 239 [2d Dept. 1994]).

Summary judgment is not appropriate in a medical malpractice action where the parties adduce conflicting medical expert opinions, as such credibility issues can only be resolved by a jury (*Roca v. Perel*, 51 AD3d 757 [2d Dept. 2008]). The existence of conflicting expert opinions in a medical malpractice action creates a triable issue of fact (*Wallenquest v. Brookhaven Mem. Med. Ctr.*, 28 AD3d 538 [2d Dept. 2006]).

Here, the defendants met their initial burden of demonstrating entitlement to judgment as a matter of law by submitting expert affirmations establishing that defendants did not deviate from accepted standards of medical practice and that, in any event, any alleged acts or omissions were not a proximate cause of plaintiff's damages, as she was very ill to begin with.

[* 9]

In opposition, plaintiff's expert refuted the assertions of the defendants' experts and opined that the departures from the standard of care were a proximate cause of decedent's injuries, pain and suffering, and death. "In a medical malpractice action where causation is often a difficult issue, a plaintiff need do no more than offer sufficient evidence from which a reasonable person might conclude that it was more probable than not that the defendants' deviation was a substantial factor in causing the injury (*Johnson v. Jamaica Hosp. Med. Ctr.*, 21 AD3d 881, at 883 [2d Dept. 2005]). Here, Dr. Freed's affirmation raises clear questions of fact sufficient to defeat summary judgment, including whether defendants complied with the standard of care in implementing a comprehensive discharge plan when decedent left Putnam, and whether Emerald Peek provided care and treatment compliant with the standard of care. Based on the evidence, a jury may infer that defendants' conduct diminished plaintiff's chance of a better outcome or served to increase her injury (*Flaherty v. Fromberg*, 46 AD3d 743 [2d Dept. 2007]).

All other requests for relief have been considered by the Court and are denied.

Accordingly, it is

ORDERED that the motion for summary judgment by the defendants Dr. Semegran and Caremount Medical, P.C. (Motion Seq. No. 001) is denied; and it is further

ORDERED that all of plaintiff's claims against Dr. Semegran and Caremount Medical P.C. other than those listed in the expert affirmation of Dr. Jeffrey Freed are severed and dismissed; and it is further

ORDERED that that branch of Motion Seq. No. 002 for summary judgment by the defendant, Carerite Centers, LLC, dismissing plaintiff's complaint is granted in its entirety; and it is further

[* 10]

ORDERED that that branch of Motion Seq. No. 002 for summary judgment by the defendant, West Ledge OP LLC d/b/a The Emerald Peek Rehabilitation and Nursing Center, (Motion Seq. No. 002) is denied; and it is further

ORDERED that all of plaintiff's claims against Emerald Peek other than those listed in the expert affirmation of Dr. Jeffrey Freed are severed and dismissed; and it is further

ORDERED that the Clerk is directed to enter judgment in favor of Carerite Centers, LLC dismissing plaintiff's complaint and all cross claims as against Carerite; and it is further

ORDERED that the remaining parties shall appear for a virtual pre-trial conference via Microsoft Teams on **July 22, 2025, at 10:30 a.m.**

This is the Decision and Order of the Court.

ENTER

May 12, 2025

Hon. Judith N. McMahon
J.S.C.

[* 11]