■ ANDREW FEINSTEIN et al., Individually and as Coadministrators of the Estate of FRANCES FEINSTEIN, Deceased, Respondents, v NORWEGIAN CHRISTIAN HOME & HEALTH CENTER, INC., Defendant, and OLENA KSOVRELI, M.D., Appellant. [24 NYS3d 660]—

In an action, inter alia, to recover damages for medical malpractice, etc., the defendant Olena Ksovreli appeals from (1) an order of the Supreme Court, Kings County (Pfau, J.), dated April 4, 2013, which denied her motion pursuant to CPLR 4404 (a) to set aside a jury verdict on the issue of liability finding her 70% at fault for the injuries sustained by the decedent, Frances Feinstein, and for judgment as a matter of law, or, alternatively, to set aside the verdict on the issue of liability as contrary to the weight of the evidence and in the interest of justice and for a new trial, or, alternatively, to set aside, as excessive, a jury verdict on the issue of damages awarding the plaintiffs the principal sum of $1,500,000 for conscious pain and suffering and loss of enjoyment of life, and (2) a judgment of the same court entered May 1, 2013, which, upon the jury verdicts on the issues of liability and damages, and upon the order, is in favor of the plaintiffs and against her in the principal sum of $1,050,000.

Ordered that the appeal from the order is dismissed, without costs or disbursements; and it is further,

Ordered that the judgment is reversed, on the facts and in the exercise of discretion, without costs or disbursements, that branch of the motion of the defendant Olena Ksovreli which was to set aside, as excessive, the jury verdict on the issue of damages is granted, the order is modified accordingly, and the matter is remitted to the Supreme Court, Kings County, for a new trial on the issue of damages, unless, within 30 days after service upon the plaintiffs of a copy of this decision and order, the plaintiffs shall serve and file in the office of the Clerk of the Supreme Court, Kings County, a written stipulation consenting to reduce the award of damages for conscious pain and suffering and loss of enjoyment of life from the principal sum of $1,500,000 to the principal sum of $550,000, and to the entry of an appropriate amended judgment accordingly; in the event that the plaintiffs so stipulate, then the judgment, as so reduced and amended, is affirmed, without costs or disbursements. The findings on the issue of liability are affirmed.

The appeal from the intermediate order must be dismissed because the right of direct appeal therefrom terminated with

the entry of the judgment in the action (*see Matter of Aho*, 39 NY2d 241, 248 [1976]). The issues raised on the appeal from the order are brought up for review and have been considered on the appeal from the judgment (*see* CPLR 5501 [a] [1]).

Frances Feinstein (hereinafter the decedent) was placed in an assisted living facility in February 2006, after being diagnosed with Alzheimer's disease and dementia. While there, the decedent had one documented fall in June 2006, and was noted to have ecchymosis on her chin and jaw and a skin burn on her forehead of unknown origin. Her mental status continued to deteriorate. The appellant was the decedent's primary care physician during this time.

On July 8, 2006, the decedent fell and sustained a "knot" on her head. The following day, she complained of headaches and was taken to a hospital, where she had a seizure and was thereafter bedridden and unable to communicate. She was ultimately transferred to a nursing home, where she died on September 14, 2007.

Thereafter, the plaintiffs, who are the decedent's children and the co-executors of her estate, commenced this action, inter alia, to recover damages for medical malpractice. At trial, the jury found that the appellant departed from good and accepted medical practice in her treatment of the decedent, that such departure was a substantial factor in causing the decedent to suffer a brain injury, and that the appellant was 70% at fault for the decedent's injuries.

"Before granting a motion pursuant to CPLR 4404 (a) to set aside a verdict and for judgment as a matter of law, the trial court must conclude that there is simply no valid line of reasoning and permissible inferences which could possibly lead rational [people] to the conclusion reached by the jury on the basis of the evidence at trial" (*Capwell v Muslim*, 80 AD3d 722, 723 [2011] [internal quotation marks omitted]; *see Lang v Newman*, 12 NY3d 868, 870 [2009]; *Cohen v Hallmark Cards*, 45 NY2d 493, 499 [1978]). Moreover, a jury verdict should not be set aside as contrary to the weight of the evidence unless the jury could not have reached the verdict by any fair interpretation of the evidence (*see Lolik v Big v Supermarkets*, 86 NY2d 744, 746 [1995]). Here, there was a valid line of reasoning and permissible inferences by which the jury, on the basis of the evidence presented at trial, could have rationally reached its verdict on the issue of liability, and its findings were based upon a fair interpretation of the evidence and, thus, were not contrary to the weight of the evidence.

"To establish liability for medical malpractice, a plaintiff

must prove that the defendant deviated or departed from accepted community standards of practice, and that such departure was a proximate cause of the plaintiff's injuries" (*Caggiano v Cooling*, 92 AD3d 634, 634 [2012]). Contrary to the appellant's contention, the plaintiffs established at trial that the appellant deviated or departed from accepted community standards of practice, and that such departure was a proximate cause of the decedent's injuries.

The plaintiffs' internal medicine and geriatric care expert, David Marks, testified, inter alia, that the appellant departed from good and accepted medical practice by failing to properly assess the decedent's risk of falling in light of her medical and mental condition, failing to properly recommend that fall precaution measures be implemented for the decedent's safety, and failing to recommend to the decedent and the plaintiffs that the decedent required a higher level of care. The appellant contends that she could not have departed from good and accepted medical practice by failing to recommend that fall precaution measures be implemented for the decedent's safety since the evidence presented at trial established that the decedent resided in an assisted living facility which prohibited the use of such fall precaution measures. However, Marks testified that the appellant was required to assess the decedent's needs based upon her medical and mental status and to make proper recommendations therefor, and the fact that the decedent resided in an assisted living facility did not relieve the appellant of that responsibility.

The appellant also contends that the jury could not have found that she departed from good and accepted medical practice by failing to recommend to the decedent and the plaintiffs that the decedent required a higher level of care in light of the trial court's ruling precluding Marks from testifying regarding the standards and regulations governing retention of residents in an assisted living facility. Relatedly, she contends that the trial court erred in permitting Marks to testify regarding the decedent's need for a higher level of care, since such testimony referred to transferring the decedent to a nursing home. These contentions are without merit. "[T]he admissibility and limits of expert testimony lie primarily in the sound discretion of the trial court" (*People v Brown*, 97 NY2d 500, 505 [2002] [internal quotation marks omitted]). The trial court properly permitted Marks to testify regarding the applicable standard of care. Contrary to the appellant's contention, Marks did not testify that the appellant or the assisted living facility where the decedent resided was negligent for retaining

the decedent at the assisted living facility. Rather, Marks was properly permitted to testify that the appellant, as the decedent's primary care physician, had a duty, regardless of where her patient resided, to assess the care needed to keep her patient safe, and the fact that the assisted living facility could not implement certain fall precaution measures did not relieve the appellant of her obligation to assess and recommend what was medically necessary for the decedent, including a higher level of care in light of factors which included her age, history of falls, and worsening mental status.

"Establishing proximate cause in medical malpractice cases requires a plaintiff to present sufficient medical evidence from which a reasonable person might conclude that it was more probable than not that the defendant's departure was a substantial factor in causing the plaintiff's injury" (*Semel v Guzman*, 84 AD3d 1054, 1055 [2011]). Marks testified at trial that the fall precaution measures that should have been recommended by the appellant, but were not, would have decreased the likelihood of falls. Marks was not obligated to quantify the extent to which the appellant's acts or omissions decreased the decedent's chance for a better outcome or increased her injury (*see Goldberg v Horowitz*, 73 AD3d 691 [2010]). Furthermore, at trial, the plaintiffs presented the testimony of one of the decedent's treating neurologists. The neurologist testified that the decedent had had a seizure secondary to head trauma from the fall she sustained on July 8, 2006.

Therefore, the jury's findings that the appellant committed medical malpractice were supported by legally sufficient evidence and were not contrary to the weight of the evidence.

The award of damages for conscious pain and suffering and loss of enjoyment of life was excessive to the extent indicated.

The appellant's remaining contentions are without merit. Leventhal, J.P., Cohen, Duffy and LaSalle, JJ., concur.