■ LYNN REED, Respondent, v CORNELL UNIVERSITY et al., Appellants. [30 NYS3d 163]—

In an action to recover damages for breach of contract and negligence, the defendants appeal from an amended judgment of the Supreme Court, Dutchess County (Brands, J.), entered March 7, 2014, which, upon a jury verdict in favor of the plaintiff on the issue of liability and awarding damages in the principal sum of $212,841.83, and upon an order of the same court dated January 30, 2014, denying their motion, inter alia, pursuant to CPLR 4404 (a) to set aside the verdict and for judgment as a matter of law, or in the alternative, to set aside the verdict as contrary to the weight of the evidence and for a new trial, is in favor of the plaintiff and against them in the principal sum of $212,841.83.

Ordered that the amended judgment is reversed, on the law, on the facts, and in the exercise of discretion, without costs or disbursements, that branch of the defendant's motion which was to set aside the verdict on the issue of damages and for a new trial on that issue is granted, the order dated January 30, 2014, is modified accordingly, and the matter is remitted to the Supreme Court, Dutchess County, for a new trial on the issue of damages in accordance herewith and the entry of an appropriate second amended judgment thereafter. The findings on the issue of liability are affirmed.

The plaintiff, a horse breeder, commenced this action to recover damages resulting from the defendants' destruction of a quantity of semen obtained from one of her stallions. The defendants had agreed to collect and freeze the semen for a fee. The frozen semen remained in the defendants' care for approximately five months, at which time the plaintiff attempted to retrieve it and was informed that somehow it had thawed while in storage and was no longer viable. Following the presentation of evidence at trial, the defendants argued to the court that since the contract between the parties did not encompass storage of the semen, their retention of the semen after it was collected and frozen constituted a gratuitous bailment. The case was submitted to the jury on a theory of gratuitous bailment, and the jury returned a verdict in favor of the plaintiff on the issue of liability and awarding her damages in the principal sum of $212,841.83.

Contrary to the defendants' contention, the record supports the jury's verdict on the issue of liability. The evidence at trial established that a gratuitous bailment was created when the plaintiff transferred possession of her property to the defendants without compensation, profit, or benefit (*see Dalton v Hamilton Hotel Operating Co.*, 242 NY 481, 486 [1926]). In a gratuitous bailment, the bailee is only liable to the bailor for the bailee's gross negligence. However, "the failure to return the object bailed establishes a prima facie case of gross negligence, requiring the bailee to come forward with an explanation" (*Voorhis v Consolidated Rail Corp.*, 60 NY2d 878, 879 [1983]; *see Dalton v Hamilton Hotel Operating Co.*, 242 NY at 488; *Roth v Black Star Publ. Co.*, 239 AD2d 484, 485 [1997]). Here, the defendants failed to return the plaintiff's property, which was destroyed while in their possession, and further failed to come forward with an explanation to negate the resulting prima facie case of gross negligence. Accordingly, there is no basis to set aside the verdict on the issue of liability as a matter of law, as there was a valid line of reasoning and permissible inferences which could lead rational people to the conclusion reached by the jury on the basis of the evidence at trial (*see generally Cohen v Hallmark Cards*, 45 NY2d 493, 499 [1978]; *Feinstein v Norwegian Christian Home & Health Ctr., Inc.*, 135 AD3d 699 [2016]). Moreover, the verdict on the issue of liability was not contrary to the weight of the evidence, as the evidence on that issue did not so preponderate in favor of the defendants that the verdict could not have been reached upon any fair interpretation of the evidence (*see Raso v Jamdar*, 126 AD3d 776 [2015]; *see generally Lolik v Big V Supermarkets*, 86 NY2d 744, 746 [1995]).

However, the verdict on the issue of damages was contrary to the weight of the evidence and must be set aside. The jury awarded the plaintiff the principal sum of $212,841.83 by calculating that each of the 210 destroyed containers, or "straws," of semen had a retail value of $1,000, for a total of $210,000, and then added $2,841.83, which was the amount that the defendants had billed the plaintiff for medical and collection services provided for the plaintiff's stallion. This was error.

Where property is totally destroyed, "the measure of damages is its reasonable market value immediately before destruction" (*Gass v Agate Ice Cream, Inc.*, 264 NY 141, 144 [1934]). "The market value of a merchant's goods is the price at which they could be replaced in the market, not the retail price at which they could be sold" (*Ever Win, Inc. v 1-10 Indus. Assoc.*, 111 AD3d 884, 886 [2013]; *see Wehle v Haviland*, 69 NY 448, 450 [1877]; *Fultonville Frozen Foods v Niagara Mohawk Power Corp.*, 91 AD2d 732, 733 [1982]). Nevertheless, where goods are already under contract for a specified price and awaiting delivery, recovery of the retail price, including the seller's lost profits, is permissible (*see Ever Win, Inc. v 1-10 Indus. Assoc.*, 111 AD3d at 886).

Here, the plaintiff submitted evidence of executed contracts for the sale of 16 of the destroyed straws of semen to various breeders at the price of $1,000 per straw. Since the amount of lost profits associated with these contracted sales was certain and definite, the plaintiff was entitled to an award of $16,000 for the loss of these 16 straws (*see generally Steitz v Gifford*, 280 NY 15, 20 [1939]; *Ever Win, Inc. v 1-10 Indus. Assoc.*, 111 AD3d at 886). However, with respect to the remaining 194 straws that were destroyed, for which no contracts to purchase had been executed, the proper measure of market value is the price at which they could be replaced with a product of similar quality and characteristics in the market that existed immediately before their loss (*see Ever Win, Inc. v 1-10 Indus. Assoc.*, 111 AD3d at 886). Accordingly, we remit the matter for a new trial and determination limited to that issue.

Finally, we note that the jury erred in awarding $2,841.83 to the plaintiff, representing the amount billed by the defendants for services provided for the plaintiff's stallion. The evidence adduced at trial established that shortly after the loss, the defendants paid $2,045 to the plaintiff as a refund of their charges for the collection and freezing of the stallion's semen, and that the plaintiff was not entitled to recover the balance of $796.83, which was billed for the provision of unrelated

services. Mastro, J.P., Chambers, Roman and Cohen, JJ., concur.