Tchiyuka v State of New York (2023 NY Slip Op 23423)

[*1]

Tchiyuka v State of New York

2023 NY Slip Op 23423

Decided on December 31, 2023

Court Of Claims

Chaudhry, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on December 31, 2023
Court of Claims

Brian Tchiyuka, Claimant,

against
The State of New York, Defendant.

Claim No. 135120

For Claimant:
BRIAN TCHIYUKA, Pro Se 
For Defendant:
LETITIA JAMES, New York State Attorney General
By: Glenn C. King, Assistant Attorney General

Zainab A. Chaudhry, J.

Claimant Brian Tchiyuka, an individual formerly incarcerated in the custody of the New York State Department of Corrections and Community Supervision (DOCCS), brings this bailment claim pursuant to Court of Claims Act § 10 (9), seeking damages for several items of personal property that he alleges went missing through DOCCS' negligence and were not returned to him after a transfer between correctional facilities.[FN1]
The claim seeks a total of $3,454.04 in damages, including reimbursement of the filing fee, as well as the cost of photocopies in connection with bringing the claim. After considering the testimony and documentary evidence received at trial, as well as reviewing the parties' arguments and the applicable law, the Court finds defendant liable for negligent bailment and claimant is awarded the sum of $1,101.39.
Facts
Claimant was the only witness to give testimony at trial. The Court also received into evidence claimant's Exhibits 1 through 11, upon defendant's consent and stipulation. Claimant's admitted exhibits included records of claimant's administrative lost property claim, several personal [*2]property transfer forms,[FN2]
as well as invoices and other records indicating the value of the various lost items.
Claimant testified that, on April 4, 2019, in preparation for his transfer from Washington Correctional Facility to Woodbourne Correctional Facility, his bags were packed for transport. Claimant stated that he had five bags for transfer: the four bags that are typically allowed to incarcerated individuals being transferred, and a fifth bag containing a typewriter. Claimant's bags were packed and sealed with bar codes in Washington's draft processing area under the supervision of corrections officers and placed on the bus. The bus route was not direct and stopped at several other correctional facilities on the way to Woodbourne, including an overnight stay at another facility. When the bus arrived at Woodbourne the following day with the approximately seven or eight individuals being transferred, claimant testified that most of the bags that had been placed on the bus at Washington for that day were missing, including several of claimant's bags. 
The lost bags slowly trickled in over the next couple of weeks. Claimant testified that three of his lost bags came in during that period, but the fourth missing bag took about a month to arrive and had a different bar code tag on it upon arrival from that issued originally. Having worked as a draft processing clerk at another correctional facility for approximately a year and a half, claimant explained that the bar code tags are used for tracking bags during prison transfers and that the first three digits of the code correspond to the issuing facility during a particular time period. Given claimant's experience as a draft processing clerk and his understanding of the property transfer process, he believed that his bag had been opened and then given a new bar code in one of the facilities at which the transport bus had stopped en route to Woodbourne. Claimant explained that the relevant personal property transfer forms (Cl's Exh 2) indicated which of his five bags were missing when he arrived at Washington, specified the missing items which had been circled by the draft processing officer on the form, and confirmed that the last missing bag which arrived had a change in the bar code under which it was sealed and returned.[FN3]
Claimant further testified that most of the items of any significant value in that last bag were missing when it finally arrived, including: several articles of clothing, a pair of boots, books, magazines, photographs, cassette tapes, personal care items, a religious pendant, and a set of dominoes. Claimant also testified as to his ownership of the missing property, pointing to an earlier personal property transfer form (Cl's Exh 2), which included the lost items among property he had brought with him to Washington from Coxsackie Correctional Facility.
Claimant filed an administrative property claim during the time he was waiting for his missing bags to arrive (Cl's Exh 1). Claimant explained that he depreciated the value of his property listed on the facility claim form based on the age of the items, and their use, wear, and condition.[FN4]
His administrative claim was ultimately approved by a Deputy Superintendent for Administration after a finding, "based on [an] investigation [and] evidence," that "the [claimant's] property has been deemed to be missing" (id., at 6). Claimant was offered $111.60, which he rejected. Upon claimant's [*3]appeal, the claim was reevaulated at $140.00 as a final offer, which claimant also rejected. Following another unsuccessful administrative appeal, claimant commenced this action.
Regarding the value of the lost property, claimant reviewed and discussed the remainder of his admitted exhibits with the Court. He first noted that he kept records of everything and was doing his own bookkeeping and balancing his own bank account at the time because he was studying accounting and business administration. Claimant testified that he paid $18.00 out of his "inmate fund account" for scented oils and chew sticks that were new and never used because he had bought them right before his transfer. A disbursement form confirmed claimant's payment of this amount (Cl's Exh 3). Claimant next explained that the three Ralph Lauren Polo shirts and a Nautica sweater listed in an invoice for all four items with a purchase price of $200.00 were "fairly new," in "very good shape," and that each was worn only one time a month strictly for visitation purposes and then washed and put away (Cl's Exh 4). Claimant testified that 25 of his books were never recovered, and that some of them were new and others had been read. The invoices for the books indicated that there were 20 books that had been shipped to claimant at a total cost of $154.00 (Cl's Exh 5). He characterized his 14 lost personal magazines, for which the invoices indicated that he had paid a total of $276.87, as "fairly new" (Cl's Exh 6). As for the 25 lost cassette tapes, claimant stated that music was a "getaway" when he occasionally listened to the tapes in the evenings, and that they were all "fairly new." The invoices for the cassette tapes established that claimant paid a total of $320.34 for them (Cl's Exh 7). Claimant testified that his boots, for which a Form 1755V for personal property indicated a "receipted value" of $80.00, were only worn twice for visits because he was transferred out of the facility soon after receiving them (Cl's Exh 8). Claimant further testified that his missing gold chain and cross pendant had a value of $46.00, as confirmed by the facility permits he had to possess them (Cl's Exh 9). He also stated that the chain and cross had a lot of sentimental value to him. Claimant also lost another, more "formal" Nautica sweater intended to be worn for visits, and for which another Form 1755V acknowledged a "receipted value" of $36.00 (Cl's Exh 10). Claimant described his missing plastic dominoes as "barely used," and an invoice indicated that he paid $6.50 for the set (Cl's Exh 11).
As for the 2500 photographs that were not recovered, claimant testified that they were all family photos printed out for him by his wife throughout his years in prison and that he did not have receipts for them. He explained that he tried to recover the receipts from the photo lab at which they were printed but was unable to do so given how long ago they were ordered. Claimant testified that each photo cost 10 cents to print, but that he was also seeking an additional 90 cents for each photo for their sentimental value. Claimant further testified that many of the photos were kept in 12 photo albums and the rest were loose but stored in envelopes he made himself and categorized by the family members they depicted. He stated further that the pictures "meant a lot" to him and some of them were "unrecoverable." Claimant testified, however, that he understood that DOCCS could not evaluate the sentimental value of the photographs, but only their intrinsic value.
Finally, claimant testified that because he could find no DOCCS depreciation methodology or formula to use, he came up with the depreciation rates set forth in his facility claim for the various items based on the age of the items and their use, wear, and condition—namely, no depreciation for the new scented oils, chew sticks, and formal Nautica sweater; a depreciation rate of 25% for the used Ralph Lauren shirts, used Nautica sweater, personal magazines, cassette tapes, Nike boots, gold chain / cross, and dominoes set; and a depreciation rate of 35% for the books (Cl's Exh 1). 
The State did not dispute claimant's trial testimony on any point but conducted a brief cross-examination on the non-existence of any depreciation notes maintained by DOCCS to be used in evaluating facility property claims and to clarify that claimant sought to recover for the sentimental value of the missing photographs. The State called no witnesses to otherwise counter claimant's [*4]testimony or his valuation and depreciation rates of the lost items. Upon claimant's consent and stipulation, the Court received into evidence defendant's Exhibits A through D, which consisted of copies of claimant's administrative lost property claim and the relevant personal property transfer forms, as well as DOCCS' communications with claimant about the two facility claim reimbursement offers. In closing, the State argued only that no award could be made for the sentimental value of the missing photographs.
Analysis
The State has a common-law duty to secure the personal property of incarcerated persons when such property is in its possession and, as a bailee, may be held liable for a breach of that duty (see Pollard v State of New York, 173 AD2d 906 [3d Dept 1991]; see also Foy v State of New York, 182 AD2d 670, 671 [2d Dept 1992]; Waul v State of New York, UID No. 2004-009-134 [Ct Cl, Dec. 9, 2004] [Midey, Jr., J.], affd 27 AD3d 1114 [4th Dept 2006], lv denied 7 NY3d 705 [2006]; 7 NYCRR part 1700 [DOCCS facility regulations governing administrative personal property claims of incarcerated persons]). In order to establish a prima facie case of negligent bailment in the prison context, a claimant must demonstrate the delivery of the property to correctional facility staff, and that the property was not returned upon claimant's demand, or not returned in the same condition (see Waul, supra; see also Cunningham v State of New York, 75 Misc 3d 1214[A] [Ct Cl 2022] [Mejias-Glover, J.]; see generally Claflin v Meyer, 75 NY 260, 262 [1878]; Board of Educ. of Ellenville Cent. School v Herb's Dodge Sales & Serv., 79 AD2d 1049 [3d Dept 1981]). Such a failure to return property "raises the presumption of liability on the part of the bailee"—here, DOCCS—but the bailee may rebut the prima facie case by "coming forward with evidence to overcome the presumption" of negligence (Weinberg v D-M Rest. Corp., 60 AD2d 550, 550 [1st Dept 1977], citing Procter & Gamble Distrib. Co. v Lawrence Am. Field Warehousing Corp., 16 NY2d 344, 359 [1965] and Dalton v Hamilton Hotel Operating Co., 242 NY 481, 488, 489 [1926]; see Waul, supra; see also Cunningham, supra).[FN5]
For example, DOCCS may "rebut the prima facie case if it shows either how the loss occurred and that this was in no way attributable to its negligence, or that the requisite care was exercised in all respects to the bailed goods" (Singer Co. v Stott & Davis Motor Express, 79 AD2d 227, 231 [4th Dept 1981]; see also Waul, supra [citing Singer]).
Claimant has easily established his prima facie case by a preponderance of the evidence. The Court finds claimant's uncontroverted testimony to have been extremely forthright and credible. His testimony and the documentary evidence he presented established that he owned and possessed all of the items of personal property for which he seeks compensation in this Court, as well as that the missing items were turned over to DOCCS employees and placed in sealed property bags under the supervision of corrections officers in preparation for his transfer from Washington to Woodbourne on April 4, 2019. Claimant's credible testimony and documentary evidence also show that the lost property was never returned to claimant after his arrival the next day at Woodbourne. Defendant failed to overcome the presumption of liability resulting from claimant's establishment of a prima facie case of negligent bailment inasmuch as it presented no testimony and made no argument that the loss was not the fault of the State or that it exercised due care with respect to the property claimant had placed in its custody during the transfer process. Thus, defendant is liable for the [*5]negligent loss of such property.
Defendant's liability thus having been established, claimant also bears the burden to prove by a preponderance of the evidence the damages incurred due to the bailee's negligent loss of each item of property. In such cases, "'the measure of damages is [the property's] reasonable market value'" on the date of its loss or destruction (Reed v Cornell Univ., 138 AD3d 816, 818 [2d Dept 2016], quoting Gass v Agate Ice Cream, Inc., 264 NY 141, 144 [1934]). More specifically, the fair market value is measured by evidence of the original cost of the item, and then taking into account a reasonable rate of depreciation for the property's age, use, and condition (see Mullen v Sinclair Ref. Co., 32 AD2d 1000, 1001 [3d Dept 1969], citing Jones v Morgan, 90 NY 4, 10-11 [1882]). "Receipts are the best evidence of fair market value" but, where unavailable, uncontroverted testimony about an item's replacement value may also suffice (Waul, supra, affd 27 AD3d 1114; see also Cunningham, supra; Rivera v State of New York, UID No. 2018-038-118 [Ct Cl, Dec. 12, 2018] [DeBow, J.]).
Crediting claimant's detailed trial testimony and his meticulously kept and thorough documentary evidence, which included invoices, receipts, permits, and other facility records, claimant has demonstrated not only what specific items of personal property were lost, but also what he paid for each one of them and their age and / or condition at the time of their disappearance, as well as the frequency with which he used most of them. In addition, the amount of damages requested by claimant with respect to each item (besides the photographs, as discussed below) reasonably and appropriately reflected their age, condition, and depreciated value as set forth in his administrative claim (see Moley v State of New York, UID No. 2014-044-011 [Ct Cl, Nov. 20, 2014] [Schaewe, J.]; Wolf v State of New York, UID No. 2009-009-206 [Ct Cl, Nov. 23, 2009] [Midey, Jr., J.]). None of claimant's testimony or other proof was disputed or controverted by defendant. Nor did defendant contest the depreciation values claimant assigned to any of the items.
As to the lost photographs, claimant credibly and emotionally testified about how much they meant to him and that some of them are irreplaceable. To be sure, the loss of cherished family photos, particularly those that cannot be recovered, evokes strong sympathy for claimant's loss. But this Court is unable to award claimant the full measure of damages he seeks. Photographs have no fair market value upon which a damages award may be based, and "recovery of the sentimental or emotional loss consequent upon [their] destruction" is not permitted; however, an award limited to their intrinsic value may be appropriate (Kennedy v McKesson Co., 58 NY2d 500, 507 [1983], citing Lake v Dye, 232 NY 209, 214 [1921], Furlan v Rayan Photo Works, Inc., 171 Misc 839, 840-841 [Mun Ct, Queens County 1939], and Valentino v Nasio Studio, Inc., 136 Misc 826, 826 [App Term, 1st Dept 1930]; see also Mullen, 32 AD2d at 1001 [stating that personal property which has "no true market value, may be appraised at its actual or intrinsic value" and "the element of cost is a relevant and important factor"]). Here, claimant is seeking $1.00 for each photograph, most of which reflects their sentimental value to him. Leaving aside such sentimental value, claimant testified at trial that the photographs were printed at a cost of 10 cents each. "[T]aking into consideration the cost of the picture[s] lost," claimant is entitled to 10 cents per photograph (Valentino, 136 Misc at 826; see Lake, 232 NY at 214 [property owners "should be allowed to recover the value to [them] based on [their] actual money loss, all the circumstances and conditions considered, resulting from [their] being deprived of the property, not including, however, any sentimental or fanciful value [they] may for any reason place upon it"]; see also Bolling v State of New York, UID No. 2017-044-002 [Ct Cl, Jan. 30, 2017] [Schaewe, J.]; Johnson v State of New York, UID No. 2009-030-002 [Ct Cl, Jan. 15, 2009] [Scuccimarra, J.]; Richards v State of New York, UID No. 2016-029-011 [Ct Cl, Jan. 28, 2016] [Mignano, J.]; Spears v State of New York, UID No. 2011-044-009 [Ct Cl, Oct. 25, 2011] [Schaewe, J.]; Williams v State of New York, 61 Misc 3d 743, 745 [Ct Cl 2018] [Soto, J.] [all awarding intrinsic value damages for lost photographs and / or the cost of development]).
In sum, claimant has proven his negligent bailment claim by a preponderance of the evidence and the Court makes the following findings with respect to the valuation of his lost property, in accordance with the fair and reasonable depreciation rates assigned by claimant based upon each item's age, use, and condition:
1. Brand new scented oils and chew sticks — loss valued at $18.00 with no depreciation;
2. Three (3) Ralph Lauren shirts and one (1) Nautica shirt — loss valued at $150.00 after a 25% depreciation;
3. Twenty (20) new and used books — loss valued at $100.10 after a 35% depreciation;[FN6]
4. Fourteen (14) magazines — loss valued at $207.65 after a 25% depreciation;[FN7]
5. Twenty-five (25) music cassette tapes — loss valued at $240.26 after a 25% depreciation;[FN8]
6. One (1) pair of Nike boots — loss valued at $60.00 after a 25% depreciation;
7. Gold chain and pendant — loss valued at $34.50 after a 25% depreciation;
8. One (1) new Nautica sweater — loss valued at $36.00 with no depreciation;
9. One (1) set of plastic dominoes — loss valued at $4.88 after a 25% depreciation; and
10. Two thousand five hundred (2500) photographs — loss valued at $250.
Finally, to the extent claimant seeks to recover expenditures for photocopying he incurred in prosecuting this action, the Court denied such relief at trial and adheres to that determination. An award for costs is prohibited by Court of Claims Act (CCA) § 27 (see Frederick v New York State Thruway Auth., 143 AD3d 1267, 1268 [4th Dept 2016]; Taylor v State of New York, 160 Misc 2d 120, 126 [Ct Cl 1994]; see also Banner Milling Co. v State of New York, 117 Misc 33, 54 [Ct Cl 1921] [similarly construing Code Civ. Proc. § 274, the predecessor statute to CCA § 27], affd as amended 210 AD 812 [4th Dept 1924], affd 240 NY 533 [1925]).
Accordingly, claimant is awarded damages in the total amount of $1,101.39, together with the appropriate statutory interest pursuant to CPLR 5001 and 5002, from the date of accrual, April 5, 2019. To the extent that claimant has paid a filing fee, it may be recovered pursuant to Court of Claims Act § 11-a (2).
Let judgment be entered accordingly.
December 31, 2023
Albany, New York
ZAINAB A. CHAUDHRY
Judge of the Court of Claims

Footnotes

Footnote 1:Claimant exhausted his administrative remedies and timely served and filed the claim as required under section 10 (9).

Footnote 2:These forms are designated as Form 2064 and are also known as "I-64" forms.

Footnote 3:Clearer copies of these documents were received into evidence as defendant's Exhibit B, upon claimant's consent and stipulation.

Footnote 4:In addition to the missing property that is the subject of this claim, the administrative facility claim included several other items of claimant's personal property not relevant to the present action because they were subsequently recovered (Cl's Exh 1; see Claim ¶ 12).

Footnote 5:DOCCS' regulations governing the administrative determination of prison property claims are themselves consistent with these well-established principles (see 7 NYCRR 1700.7 [b] [1] [providing that, if DOCCS fails without good explanation to deliver property that was last in its control to the incarcerated person in the same condition as when it was received, "there is a rebuttable presumption that [DOCCS] is negligently responsible for the loss"]).

Footnote 6:Although claimant testified to a loss of 25 books that originally cost a total of $154.00, his administrative claim and the invoices in evidence demonstrated that he paid that amount for 20 books (Cl's Exhs 1 & 5). 

Footnote 7:Although claimant's administrative claim asserts a total original cost of $277.35 for the magazines, the invoices in evidence establish that he paid $276.87 for them (Cl's Exh 6).

Footnote 8:Although claimant's administrative claim asserts a total original cost of $354.08 for the cassette tapes, the invoices in evidence establish that he paid $320.34 for them (Cl's Exh 7).